ANDREW J. TILLOTSON, Appellant, *vs.* DAVID J. MILLARD *et als.*,
Respondents.

APPEAL FROM THE DISTRICT COURT OF FILLMORE COUNTY.

Under the homestead act of 1858, actual residence by the debtor and his family, upon the premises claimed as a homestead, was necessary in order to exempt them from sale on execution.

The lien of the judgment attached to the homestead equally with other real estate of the debtor, and when he removed from and abandoned the premises as a homestead, the same became subject to levy and sale upon execution.

The act of March 10th, 1860, authorizing the debtor to remove from the premises claimed as a homestead, without rendering them liable to sale on execution, is unconstitutional and void with respect to judgments obtained previous to the passage of the act.

This was an action brought by the Plaintiff to set aside a
sale of the west half of the north-east quarter section 3, town
102, range 10, made by defendant Pickett, as sheriff of Fillmore
county, on an execution issued to him for a judgment in fa-
vor of Defendant, Millard, and against Plaintiff, at which
sale Defendant, Butler, became the purchaser of said
premises.

The issue in said action came on to be tried before his honor
Thomas Wilson, judge of said Court, at the term thereof
holden in Preston in said county, on the third day of June
1861, and the parties by their attorneys waived a trial by
jury.

The counsel for the Plaintiff and Defendants agreed to the
following statement as evidence in the case, and that upon
such statement and the pleadings therein, the Court should
give judgment in the action, viz:

That on and prior to the 2d day of April, 1860, the Plain-
tiff was the owner, and with his family resided upon the land
aforesaid, described in the pleadings in this action. That on
said day he removed with his family from said premises to
Chatfield, in said county, where he has ever since resided
with his family.

That at the time of the levy upon said premises by Defendant Pickett, as sheriff, by virtue of the execution named in the pleadings, and at the time of the sale thereof as stated in the supplemental complaint, the Plaintiff notified the Defendants that he regarded said premises as his homestead, and claimed the same as such, and forbid the said levy and sale.

That a short time after the levy aforesaid, the Plaintiff told Defendant, Pickett, that he was trying to sell the aforesaid premises, and if he effected a sale thereof, he would be able to pay the sum due on the execution aforesaid, and that he had made a contract for the sale thereof, and was about to purchase a farm for his residence in the county of Winona, and did not intend to again reside on said premises.

And no other or further evidence was offered in said action by either party, and the same was then argued by the attorneys for the parties, and the Court held the said cause under advisement until the 14th day of November, 1861, at which time at a term of said Court, held at Preston in said county, before his honor Thomas Wilson, judge of said Court, the Court found upon the issues in said action against the Plaintiff, and ordered that the same be made of record, as, upon motion by the Plaintiff for a judgment upon the pleadings in said action, and upon motion of Defendants' attorney, the following order was made by the Court therein :

"The Plaintiff in this action, having in open Court, by his counsel, Jones, Willard & Jones, admitted that on the second day of April, 1860, the Plaintiff removed with his family from the land and premises described in the complaint in this action, and had ever since that time resided in the town of Chatfield, and having moved the Court, upon the pleadings in this action, for the judgment demanded in the complaint, —after hearing Jones, Willard & Jones, Plaintiff's attorneys, in support of said motion, and Henry C. Butler, Defendants' attorney, in opposition thereto, it is adjudged and ordered that said motion be denied. The Plaintiff and Defendants, by their said attorneys, having stipulated that the Court should render judgment upon the pleadings in this action and the admissions aforesaid, it is also ordered and ad-

judged that judgment be rendered in this action for the Defendants."

Points and Authorities of Appellant.

I.—The premises named in complaint were the homestead of Appellant at the time of the levy and sale. *Pub. Stat., p.* 569, *sec.* 92, *&c.* Therefore the judgment of the Court below should be reversed.

II.—All laws (including those repealed) in *pari materia,* should be considered in arriving at the intention of the Legislature. 3 *Mass. Rep.,* 21 ; *id.,* 296 ; 1 *Pick.,* 248 ; 10 *id.,* 235 ; 1 *Kent Com.,* 463 ; 22 *Pick., R.,* 572 ; 20 *id.,* 267 ; 6 *Cranch,* 307.

III.—Actual residence on the premises is not necessary to entitle a debtor to his privilege of exemption. *Pub. Stat., p.* 569, *secs.* 92–3–4; *Rev. Stat.* 1851, *p.* 363, *sec.* 93. The words " occupancy as a residence," used by this Court in *Folsom et al. vs. Carli,* 5 *Minn. R.,* 333, were unnecessary in that case. The Court intended that "occupancy" was necessary, and nothing more was meant by the language used.

IV.—The word " occupied," as used in the statute, means " use, tenure, possession," and in no connection means "residence upon." *Burrill's Law Dictionary; Webster's Dictionary.*

As to the construction to be placed upon the word, see authorities cited in support of the eighth point.

V.—The requirement of *sec.* 95, *Pub. Stat. p.* 570, is to prevent an abuse of discretion on the part of an officer levying an execution, and does not establish the rule that a "residence upon the land claimed " is necessary. It cannot affect the right of the debtor to select, nor his option, as given him by section 92 of same act. Section 94 of same act presupposes a case in which the " homestead of a householder " may be unselected, which would be an absurdity if his residence was alone exempt. 18 *John.'s R.,* 400; 19 *Wend. R.,* 475; 25 *id.,* 370.

VI.—The debtor may select any land he may own, as his

homestead. *Pub. Stat. cited in favor of 3d point, and authorities cited in favor of 8th point.*

VII.—The word "homestead" does not mean necessarily "the place of residence." *Burrill's Law Dictionary; Webster's Dictionary.*

VIII.—If such is the meaning of the word "homestead," it has a different signification in the statute; otherwise it is inconsistent with the subsequent language of the act of Aug. 12, 1858, (*Pub. Stat.*, *p.* 569), giving the debtor a selection and option, as between different places; and negatives the only possible construction to be placed upon that act, when considered in connection with the law which it repealed. *R. Stat.* 1851, *p.* 363, *sec.* 93.

The statute of 1851 required a "residence upon the land claimed," in very accurate terms, and the only marked change in the act of 1858 is the dispensing with those terms. There must be a reason given for the alteration in the language used. In such case the literal import of the word homestead should not prevail. *U. S. vs. Fisher*, 2 *Cranch*, 386, 399; *id.*, 336; *Smith's Com. on Statute and Constitutional Law, page* 571, *etc.*

IX.—The act of 1860, (*Sess. Laws*, *p.* 286), applies to the case at bar. It is not retroactive. 3 *N. H.*, 477; 2 *Gallison*, 105; 8 *Mass.*, 423; 2 *Greenl.*, 293; *Folsom et al. vs. Carli*, 5 *Minn.*, 333.

X.—A judgment lien is not a vested right, and may, therefore be abolished by the Legislature. *Burrill's Law Dictionary, title "Inchoate," "vest;" Coke Litt.*, 345 *a*, 345 *b;* 1 *Kent Com.*, 501 *etc., and notes; authorities cited to last point, ante.*

XI.—In the case at bar, the judgment stated in the pleadings was not a lien on the real property of the Appellant mentioned. *Pub. Stat.*, *p.* 566, *secs.* 72–3, 76–7–8.

It does not come within the provisions of the statute referred to whereby alone judgment liens exist.

XII.—A judgment is not a lien upon exempt property. If it was, it would be a lien without a remedy;—a right without any means whereby it could be reduced to enjoyment; which would be an anomaly.

The statutes exempting real property from sale on execution, and providing for liens by judgments docketed, should be construed together. They both refer to the same subject matter. The former provides a limitation of, and an exemption from the effect of the latter.

That portion of the answer which alleges an abandonment, admits that the premises were the homestead of the Appellant up to the time of the removal alleged.

Points and Authorities for Respondents.

I.—At the time of the levy and sale on execution of the premises described in the complaint, the Appellant had abandoned them as a residence, and they had ceased to be his homestead: He had removed with his family to another town, had acquired another residence, and admitted his intention not to return. *See case, folios* 39 *and* 40.

II.—Actual residence and the dwelling house of the claimant are necessary to constitute a homestead. The obvious and ordinary signification of the word homestead includes them. *Pub. Stat., p.* 569–70, *sec.* 92, 94–5; 1 *Kent's Com.*, 462; *Bur. Law Dic. and Webster's Dic.*

III.—The privilege of selection at the option of the owner, allowed in *sec.* 92, *p.* 569, *Pub. Stat.*, does not extend to any premises not used and occupied as a residence. The dwelling house is a necessary incident to the homestead, and it must be included in any selection made either by the claimant, or an officer for him.

IV.—The judgment upon which the execution was issued, was a lien upon the premises mentioned in the complaint. *See case folio* 10, *Folsom vs. Carli,* 5 *Minn. R.,* 333.

V.—The lien of a judgment is a vested right which cannot be affected or changed by subsequent statutes. It is property of which the owner cannot be deprived by legislative enactment. The act of March 10th, 1860, (*Sess. Laws* 1860, *p.* 286), so far as the same related to judgments previously obtained, was retrospective, affecting the rights of parties, and consequently inoperative. 1 *Kent's Com.*, 455 ; 4 *ib.*, 202; *Smith's*

vol vii.—66

*Com. on Const'l Construction, p.* 289, *to* 309; *Sedg. on Statutory and Constitutional Law,* 193 *to* 198.

R. A. JONES, Counsel for Appellant.

HENRY C. BUTLER, Counsel for Respondents.

*By the Court*—ATWATER, J.—The word homestead in ordinary use has a popular and well understood meaning, which may be sufficiently accurately defined as the place of residence of the family. That is the prominent idea connected with the use of the word, a dwelling house being inseparably associated with the meaning of the word, in which the family of the owner resides, and connected therewith a greater or less quantity of land. There can be no doubt but the Legislature in the exemption act have used the word in its ordinary acceptation, and have not intended it should receive any restricted or technical signification, if indeed any such it has. The language of the act of 1858, (which was in force at the time the judgment herein specified was obtained,) seems to assume, as a matter of course, that a dwelling house is a constituent and indispensable part of the homestead. While the popular idea attached to the word homestead, includes a dwelling house as an indispensable part, as above stated, it includes a certain, but no definite quantity of land, and one purpose of *sec.* 92, *p.* 569, *Comp. Stat.*, was to fix a definite limit to the quantity of land which, with the dwelling house, should constitute the homestead.

The homestead then, which the statute exempts from sale on execution, is, (in this case,) eighty acres of land, with the dwelling house thereon, and its appurtenances, owned and occupied by any resident of this State. It is claimed by the Appellant that actual residence upon the premises is not necessary to entitle a debtor to his privilege of exemption; and that the word "occupied," as used in the statute, means " use —tenure—possession." That such is the frequent meaning of the word may be conceded, but we cannot think that such is its meaning as used in this statute. The premises are to be occupied as and for the purpose of a homestead, as is mani-

fest from the connection in which the term is used. The object of the statute was to protect the debtor and his family in the enjoyment of a *home*, and not to give him the use of a certain quantity of land and dwelling house for any other purpose. To call the premises the homestead of the debtor and his family, when the debtor resides elsewhere, and rents or leaves the premises vacant, would be a misnomer—a use of language never contemplated by the legislature. Substantially the same views are expressed in *Folsom vs. Carli*, 5 *Minn.*, 333, and after further argument and consideration, we see no reason to change the views there expressed, as to the necessity of the occupancy of the homestead as a residence, by the debtor and his family, in order to entitle him to the exemption provided by statute.

The act of 1851, (*Rev. Stat.*, *p.* 363, *sec.* 93) exempted from sale on execution a homestead, "that is to say, the land and buildings thereon, occupied as a residence and owned by the debtor, he or she being a householder, to the value of one thousand dollars." The repealing act of 1858 has changed this language, using instead the phrase "occupied by any resident of this State." This language, it may be admitted, is less explicit in fixing the residence of the debtor upon the exempt premises, and the objection that by the omission of these words the Legislature intended to change the rule as to the residence, would have much force were this the only marked change in the act of 1858, as stated by the counsel for the Appellants. But the important change contemplated by the last named act, was to substitute a definite quantity of land from exemption, irrespective of value, instead of an amount limited to the value of one thousand dollars. The language employed will not justify the construction that the Legislature intended to go farther than this and dispense with a residence upon the premises. It is not necessary to adopt the opposite construction, in order to give effect to the clause in section 92, "to be selected by the owner thereof." Where the land connected with the dwelling house and residence of the debtor amounts to more than eighty acres, the excess is liable to execution, and some method must be adopted for reaching it. The statute gives the debtor the right to select

his eighty, and does not allow the Plaintiff in the execution or any other party than the debtor, to say where such excess shall be taken. Or, it may be, that where the debtor owned two dwelling houses, situated on two separate tracts of land, he would be permitted to select between them.

That in the opinion at least of the Legislature of 1860, the act of 1858 did not authorize the debtor to remove from the premises, is manifest from the fact that during the session of that year the Legislature passed an act expressly authorizing the debtor to remove from the premises without rendering them liable to sale on execution.

The judgment upon which the premises in question were sold, was obtained in December, 1858. By *sec.* 77 *Comp. Stat.*, *p.* 566, that judgment became a lien on *all* the real property of the judgment debtor in the county owned by him at the time of the judgment, or afterwards acquired. The Court had occasion in *Folsom vs. Carli*, above cited, to give a construction to this statute, and there held that the lien attached to the homestead owned and occupied by the debtor as a residence, and that the exemption of the homestead was only an exemption from sale on execution, while occupied by the debtor or his family, but did not affect the lien of the judgment.

But it is claimed that the case of the Plaintiff comes within the act approved March 10, 1860, (*Sess. Laws* 1860, *p.* 286)· This act provides, " that the owner of a homestead under the laws of this State may remove therefrom, or sell and convey the same, and such removal or sale and conveyance shall not render such homestead liable or subject to forced sale on execution or other process hereafter issued on any judgment or decree of any Court in this State or of the District Court of the United States for the State of Minnesota against such owner; nor shall any judgment or decree of any such Court be a lien on such homestead for any purpose whatever."

It is admitted by the case that the premises were owned and occupied by the Plaintiff as a homestead prior to the 2d day of April, 1860, and that upon said day he removed with his family from said premises to Chatfield, in said county, where he has ever since resided with his family. Conse-

quently, if the act be constitutional as applied to judgments obtained previous to its passage, the premises of the Plaintiff, notwithstanding his removal therefrom, were not subject to sale on execution.

The judgment creditor Millard, upon the docketing of his judgment, obtained a lien upon the premises in question. He had thereby the right to sell these premises upon the happening of a certain contingency, to wit, when the premises ceased to be occupied by the debtor or his family as a homestead. This right was perfected in the Defendant Millard, when the judgment was docketed, was then vested in him, without any further act to be done on his part. It was a valuable right, at least to some extent, and acquired by the use of the means allowed by law, and I do not think the legislature could lawfully deprive him of the power to exercise it, by any act passed subsequent to its acquisition. It has been held to be within the legitimate scope of legislative action to extend the time of redemption on the sale of mortgaged premises beyond the limit existing at the time the contract was made. But any law which prohibited the creditor from selling at all, or from in any manner obtaining possession of the premises upon which he held a mortgage lien, would doubtless be held to that extent unconstitutional and void. But this is precisely what the act in question does, save that the lien is in this case created by operation of law, instead of by the act of the parties. That however cannot alter the nature of the right, nor can the further fact that no definite time can be fixed for the happening of the contingency on which its exercise depends. It is sufficient to know that the contingency may happen at any time, and must happen at some time, either by act of the judgment debtor himself, or from the dissolution of the family relation in the usual course of nature. Unless this lien and the right consequent upon it can be said to be absolutely valueless, the Legislature had no authority to destroy it. That a homestead, trammelled with the restrictions of the act of 1858, would be of far less value to the owner, than freed from them, needs no argument to prove. Many a judgment debtor would prefer to relinquish his homestead to his creditor, rather than retain it at the price of a continued residence upon it. And

ordinarily it is probably true, that the value of the homestead is increased to the judgment creditor, in the same ratio as it is diminished to the debtor in consequence of the existence of the lien. As the construction of the law claimed by Appellant, would entirely destroy the remedy of the judgment creditor, so far as this property is concerned, I do not think it can obtain, and that the law has no application to judgments docketed and in force previous to its passage.

The only issue made by the answer is that the premises in question were not the homestead of the Plaintiff at the time of the levy ; the allegation in that behalf, being that the Defendants deny that "the land and premises described in the complaint was on the 30th day of April, 1860, the homestead of the Plaintiff or his family ; or that at said time the said Plaintiff was in the possession of the same ; * * * and further say that on the second day April, 1860, the Plaintiff removed with his family from the premises above described, without the intention of returning thereto or again occupying the same, and ceased to occupy the same as a residence and homestead and has ever since said time with his family resided and still resides in the town of Chatfield." The Appellant urges the objection that the allegation in the answer of an abandonment of the homestead by Plaintiff is not proved. It is somewhat difficult to determine from the informal manner in which the proceedings below are presented by the case, what was proved on the trial. The Judge has not made any separate statement of facts found and conclusions of law thereon as required by statute. But the judgment is not objected to by either party upon this ground. It appears from the case that the counsel for both parties agreed upon a certain statement, as evidence in the case, and upon such statement and the pleadings therein, the Court should give judgment in the action. After setting [forth this evidence, it is stated in the case "the Court found upon the issues in said action against the Plaintiff, and ordered that the same be made of record as upon motion by the Plaintiff for a judgment upon the pleadings in said action. And upon motion of Defendant's attorneys the following order was made by the Court therein :

Tillotson v. Millard.

The Plaintiff in this action having in open Court by his counsel, Jones, Willard & Jones, admitted that on the 2d day of April, 1860, the Plaintiff removed with his family from the land and premises described in the complaint in this action, and had ever since that time resided in the town of Chatfield, and having moved the Court upon the pleadings in this action for the judgment demanded in the complaint; after hearing &c., it is adjudged and ordered that said motion be denied." It is then further stated "the Plaintiff and Defendants, by their said attorneys, having stipulated that the Court should render judgment upon the pleadings in this action, and the admissions aforesaid, it is also ordered and adjudged that judgment be rendered in this action for the Defendants." Here are two different stipulations reported by the case; the first, that upon the statement of evidence and the pleadings the Court should give judgment, and the second, that upon the admissions of Plaintiff's attorneys in open Court, and upon the pleadings the Court should give judgment. The admissions show the removal of the Plaintiff and family from the premises on the second day of April, 1860, and his continued residence thereafter in Chatfield. The statement of evidence, if found true, is fuller as to the intent of permanent abandonment. From all the facts presented to this Court, we think there was sufficient to justify the Court below in finding the issue of the removal from, and abandonment of the premises, on the part of the Plaintiff as proved, and that there was no error in rendering judgment for the Defendants.

The judgment is affirmed.