JOSIAH BURWELL,

*v.*

AARON W. TULLIS, *late Sheriff*, &c., *et al.*

In November, 1858, judgment was rendered in the District Court of Ramsey County in favor of defendant, against one R., for over $2,000, and at the same time was docketed in said county. At the time of the rendition of the judgment, R. was the owner in fee of certain real estate in said county, on which the judgment became, and, it is claimed, still is a lien, and which then was by him occupied as a homestead, and continued to be by him so occupied, until June, 1865, when he conveyed to W., who in August, 1865, conveyed to the plaintiff, who now is. the owner thereof. In January, 1867, (and not before,) execution was issued on the judgment to the Sheriff of said county. Under this execution the Sheriff levied upon and advertised for sale said real estate, and this action was commenced to have the sale enjoined, and the judgment declared not to be a lien. *Held,* that *chap.* 27, *of the Laws of* 1862, is retrospective, and constitutional, and discharged said real estate from the lien of defendant's judgment.

This is an appeal by the plaintiff from an order of the District Court of Ramsey County sustaining a demurrer to the complaint. The case is sufficiently stated in the opinion of the Court.

BRISBIN & WARNER, for Appellant.

OSCAR STEPHENSON, for Respondents.

*By the Court*—WILSON, CH. J. In November, 1858, judgment was rendered in the District Court of Ramsey County in favor of defendant Tullis, against one Robert McLagan,

and others, for the sum of $2,594.20, and at the same time was docketed in said county. At the time of the rendition of judgment, McLagan was the owner in fee of certain real estate in said county, on which it is claimed the judgment became and still is a lien, and which then was by him occupied as a homestead, and continued to be so occupied until the first day of June, 1865, when he legally conveyed the same to W. R. McLagan, who on the 19th day of August, 1865, conveyed the same to the plaintiff, who now is the owner thereof in fee simple.

No execution had been issued on the judgment, nor had any attempt been made to enforce it, until the 16th of January, 1867, when an execution was issued out of the District Court of Ramsey County, to the Sheriff, commanding him to satisfy the judgment out of the personal property of the judgment debtor in the county, or if sufficient personal property could not be found, then out of the real property belonging to him on the day when the judgment was docketed, or at any time thereafter, not exceeding ten years. Under this execution the Sheriff levied upon and advertised for sale the before mentioned real estate, and this action was commenced to have the sale enjoined, and the judgment declared not to be a lien. To the complaint the defendant demurred on the ground, among others, that it does not state facts sufficient to constitute a cause of action, and the cause is removed into this court by an appeal from the order sustaining the demurrer.

The principal question in this case, is whether the judgment became, and is a lien on the premises referred to.

The statute in force when the judgment was rendered, provided, (*Sec. 76, page 566, Comp. Stat.,*) "On filing a judgment roll, upon a judgment requiring the payment of money, the judgment may be docketed with the clerk of the court, where it was rendered, and in any other county upon filing with the

clerk of the District Court of such county a transcript of the original docket; and thereupon the judgment becomes a lien on real property in the county, from the time of docketing it therein." (*Sec.* 77, *page* 566., *Ib.*) "The lien mentioned in the last section, extends to all the real property of the judgment debtor in the county, owned by him at the time of the judgment, or afterwards acquired." (*Sec.* 80, *page* 567, *Ib.*) "The party in whose favor judgment is given, may, at any time within five years after the entry thereof, proceed to enforce the same, as prescribed by statute." (*Sec.* 85, *page* 568, *Ib.*) "After the lapse of five years from the entry of judgment, if no execution has been already issued, an execution can be issued only by leave of the court on motion, upon notice to the adverse party; such leave must not be given, unless it be established by the oath of the party, or other proof, that the judgment, or some part thereof, remains unsatisfied and due." \* \* \*

*Sec.* 92, *page* 569, *Ib.*, also provides, "That a homestead consisting of any quantity of land not exceeding 80 acres, \* \* \* owned and occupied by any resident of this State, shall not be subject to attachment, levy or sale upon execution or any other process, issuing out of a court within this State," &c.

*Sec.* 1, *chap.* 95, *Laws of* 1860, reads, "That the owner of a homestead under the laws of this State, may remove therefrom, or sell and convey the same, and such removal or sale and conveyance shall not render such homestead liable or subject to forced sale on execution or other process hereafter issued on any judgment or decree of any court of this State or of the District Court of the United States for the State of Minnesota against such owner; nor shall any judgment or decree of any such court be a lien on such homestead for any purpose whatever; *Provided*, that this act shall not be so

construed as in any manner to relate to judgments or decrees rendered on the foreclosure of mortgages either equitable or legal.

In 1862, *Sec.* 80, *page* 567, *Comp. Stats.*, (above quoted,) was amended so as to read as follows: "The party in whose favor judgment is given may at any time within five years after the entry thereof, proceed to enforce the same as provided by statute, but when no execution shall have been issued and levied, or returned no property found, within five years from the time of the entry of judgment, the lien of the judgment shall be determined and the property of the judgment debtor discharged therefrom."

It has been held that a judgment recovered prior to 1860, became a lien on a homestead, (*Millard vs. Tillotson*, 7 *Minn.*, 513; *Folsom vs. Carli*, 5 *Minn.*, 333,) and that the law of 1860, above cited, does not apply to judgments rendered before its passage—(*Millard vs. Tillotson*) : but two farther questions are presented here—

1. Whether the amendment of 1862 was intended to be retroactive?

2. If so, whether the legislature, in so enacting, overstepped the boundary of its power fixed by the constitution?

As to the first question, it is a well settled rule that a law is to be presumed to have only a prospective operation, unless the contrary clearly appears to have been the intention of the legislature. In this case there seems to us to be no doubt but that the legislature did intend to make the law of 1862 applicable to judgments rendered prior to its passage. Though that law reads that *sec.* 80 "is amended so as to read as follows," it is not to be construed as repealing and re-enacting that section. Whether the legislature incorporates the old law and the amendment into one section, or in terms declares the provision added an amendment or addition, is not ma-

terial ; the intention being clearly the same in both cases.

In this case the language of *Sec.* 80, *of the Comp. Stats.*, is not to be considered as having any other or different meaning in the law of 1862, than it had in the prior law ; it is the old law retained, not a new provision added.   See *Ely et al. vs. Holton*, 15 *N. Y.*, 595.   The change of a single word, without any change in the sense, is unimportant.

The language of the amendment of 1862, is, "but when no execution shall have been issued and returned no property found, within five years from the time of the entry of the judgment, the lien of the judgment shall be determined," &c. The judgments referred to in this language, are the same referred to in *Sec.* 80, viz : all judgments whether rendered before the amendment or to be rendered thereafter.   The reason for postponing the operation of the act of 1862, for nine months after its passage, is not apparent, unless it was for the purpose of allowing owners of judgments previously rendered, to issue executions or enforce their lien before the statute should become a bar.   It may be added too, that prior judgments come within the reason, as well as the letter of the law, for no argument can be adduced in favor of limiting the duration of judgment liens, that does not apply with at least as great weight to those before rendered, as to those to be in future rendered.   These considerations lead us without hesitancy to the conclusion, that the legislature intended the law of 1862 to be retroactive ; hence it becomes necessary to consider whether it was competent to enact such law.

The legislature is supreme, except so far as restrained by the Federal or State constitutions, neither of which declares void a law relating to civil rights or remedies solely because it is retrospective.   Our constitution provides that no law shall be passed impairing the obligation of contracts, and that no person shall be deprived of property without due process .

of law; on one, or both of these provisions, it is urged the law of 1862 impinges; it is not claimed to be in conflict with any other constitutional provision.

There is much discussion, and no little conflict in the books, as to when a law should be held to impair the obligation of a contract, and when to operate merely as a change of the remedy; and also as to whether a mere statutory lien is "property," of which a party cannot be deprived by a mere legislative enactment; but it is settled that it is within the power of State legislatures to regulate the remedy and modes of proceeding in relation to past, as well as to future contracts, and that statutes of limitation pertain to the remedy, and not to the essence of the contract. Such acts are held to be invalid only when they establish such a limitation, or make such a change in the period of limitation previously established, as to necessarily or practically deny a remedy, or cut off an existing right of action.

It would unquestionably be competent for the legislature to declare that a judgment creditor must attempt to enforce his judgment within a given time, or be afterwards denied any remedy for that purpose, and it must follow that if all remedy may be taken away, under similar circumstances, any particular remedy or a part of the remedy may also be taken away.

It may be said that the statute of 1862 does not merely limit the time within which a remedy may be enforced,—i e, is not a statute of limitation, but we are unable to see any distinction between this case as it now stands, and as it would stand if the law, instead of taking away the lien, took away the power or right to enforce it. A judgment lien is not an estate or interest in the land: it is held that "it only confers a right to levy on the same, to the exclusion of other adverse interests subsequent to the judgment;" (*Massingall et al. vs.*

*Downs, 7 How. U. S.* 767; *Conrad vs. Atlantic Ins. Co.,* 1 *Pet. U. S.,* 442,) when a remedy is denied for its enforcement it is at least practically gone; it would no longer be a benefit to the judgment creditor, or an injury to the judgment debtor, or a cloud upon the title of the land owner. The difference between divesting the lien, and forever denying a remedy to enforce it, is a mere verbal distinction, without any practical or real difference.

The legislative intention and practical operation of the law would be the same in both cases; the denial of the remedy to enforce the lien being the extinguishment of the lien itself. *See Leffingwell vs. Warren,* 2 *Black.,* 599.

It is admitted that statutes of limitation cannot be made so to retrospect, as absolutely to cut off an existing right of action, and it may be doubted whether the law of 1862 could in any case be obnoxious to such objection. It did not take effect until nine months after its passage, during which period, according to some of the authorities, it operated as notice; (*Smith vs. Morrison,* 22 *Pick.,* 430; *Hedges vs. Renmaker,* 3 *Metcalf's K. R.,* 258,) giving to all parties at least that time within which to issue execution or enforce their liens. But whether this is the correct view or not is immaterial in this case, for here the law did not operate as a bar for a year after it went into effect.

The fact that McLagan, the judgment debtor, lived on the premises in question until 1865, does not we think affect the rights of either party. It is true that the premises were his homestead, and not subject to levy and sale while so occupied, but this did not excuse the judgment creditor from issuing an execution. Other property might have been found, and if not, the execution should have been returned unsatisfied, which would have been a compliance with the statutes.

Order appealed from reversed and cause remanded.