JOHN STEPHENSON and Another v. LEWIS LOHN.[1]

July 7, 1911.

Nos. 17,176—(197).

**Indian — application of proceeds of land sale to payment of judgment.**
Action, in the nature of a creditors' bill, to have satisfied a judgment out of money arising from the sale of his land by a half-blood Chippewa Indian, which the plaintiffs alleged had been transferred colorably to defraud creditors. Findings of fact and conclusions of law in favor of plaintiffs. *Held*, that the money was not exempt from execution, that the facts found are sustained by the evidence, and the conclusion of law by the facts, and that there were no reversible errors in the rulings of the court as to the admission of evidence.

Action in the district court for Norman county against Lewis Lohn, E. G. Holmes, Wild Rice Lumber Company and Scott Goodwin. The purpose of the action is mentioned in the first paragraph of the opinion. The answer of defendant Lohn alleged that the judgment of $1,028.94 was recovered against defendant Goodwin and one M. H. Nason; that defendant Scott Goodwin was a person of mixed white and Indian blood; that the land described in the complaint was allotted to him by reason of the fact that he was a member of the tribe of Chippewa Indians belonging on the White

1 Reported in 131 N. W. 1018.

Earth Indian reservation, under the act of February 8, 1887, and acts amendatory thereto; that the land was not subject to the payment of any debts contracted by the allottee prior to the issuance of a fee simple patent therefor, nor were the proceeds from the sale of such allotment to become liable for the satisfaction of any debt contracted prior to the issuance of the final patent in fee therefor; that the debt for which judgment was recovered was contracted long prior to the issuance of the patent for the allotment. The reply alleged that the judgment was rendered and docketed against Scott Goodwin, individually, and against Goodwin and Nason, copartners; that since the entry of judgment, Goodwin and Nason, copartners, had not owned anything out of which the judgment could have been satisfied; that at the time of entry of judgment M. N. Nason was and ever since had been wholly insolvent. The case was tried before Grindeland, J., who made findings and ordered judgment in favor of plaintiffs. From an order denying the motion of defendant Lohn for a new trial, he appealed. Affirmed.

*W. E. Rowe* and *John Vig,* for appellant.

*J. Albert Hendricks* and *Charles Loring,* for respondents.

START, C. J.

This action, in its last analysis, is one in the nature of a creditors' bill, brought in the district court of the county of Norman to secure the payment of a judgment in favor of the plaintiffs against the defendant Goodwin for the sum of $1,028.94 out of money, owing to him by the defendants Holmes and the lumber company, which was claimed by the defendant Lohn. The cause was tried by the court without a jury, and findings of fact were made to the effect that the allegations of the complaint were true, and judgment was ordered for the plaintiffs, directing the amount of their judgment to be paid from the money in the hands of the defendants Holmes and the lumber company. The defendant Lohn appealed from an order denying his motion for a new trial. None of the other defendants appealed, and the contest here is solely between the plaintiffs and Lohn. The facts so found by the court are to the effect following:

(1) The plaintiffs, on November 19, 1906, duly recovered judg-

ment against the defendant Goodwin for $1,028.94 upon which execution has been issued and returned wholly unsatisfied, and the judgment debtor is insolvent.

(2) When the judgment was entered, Goodwin, who is a half-blood Chippewa Indian of the White Earth band, was, by reason of such membership, the owner of an allotment of land in the county of Clearwater, for which a trust patent was issued to him on February 6, 1908. Thereafter, and prior to February 1, 1909, a patent was issued to him conveying the land in fee simple.

(3) On December 20, 1906, Goodwin entered into a contract with the defendant lumber company whereby, in consideration of $3,000, to be paid to him according to the terms of the contract, he sold and agreed to convey the land to the lumber company. The terms of the contract on the part of Goodwin have been performed by him, and there is now due to him for the land from the lumber company $2,400. On February 1, 1908, he assigned his interest in the contract to the defendant Holmes, who, in consideration thereof, executed to Goodwin an agreement, designated in the record as "Exhibit A," whereby he agreed to pay to Goodwin $1,432 five days after its payment by the lumber company, less any lawful judgments against him.

(4) Thereafter, and on November 18, 1908, Goodwin, then being insolvent, with intent to hinder and defraud his creditors, including the plaintiffs, executed an instrument to the defendant Lohn, referred to in the record as "Exhibit B," which purported to sell and assign, in consideration of one dollar, and for no other consideration, to Lohn, who then had notice of such fraudulent intent, all money due from the lumber company and Holmes to Goodwin by virtue of Exhibit A. The agreement (Exhibit B) was made for the purpose of creating a trust in the proceeds thereof for the use of Goodwin. Nor did either party thereto intend thereby to pass the title to the funds mentioned therein.

(5) Thereafter, and on May 26, 1909, Goodwin executed to the plaintiffs, in consideration of their judgment against him, an instrument, designated in the record as "Exhibit C," whereby he directed Holmes and the lumber company to pay to the plaintiffs the

judgment in full upon a delivery to them of a release and satisfaction of the judgment, such payment to be made out of the unpaid purchase price for his land. The plaintiffs caused notice of Exhibit C to be served upon Holmes and the lumber company, and the tender of a satisfaction of the judgment and a demand for its payment to be made, but payment was refused. Exhibit B was presented to the defendant Holmes before Exhibit C was executed.

1. The first group of errors urged is to the effect that the court erred in finding, because there was no evidence to support its action, that Exhibit B was intended to create a secret trust for the benefit of Goodwin, that the parties thereto did not intend to pass the title to the funds therein mentioned, and that Goodwin executed Exhibit C. The evidence, direct and circumstantial, is ample to sustain a finding that the assignment (Exhibit B) was colorable only, and was made for the purpose of defrauding Goodwin's creditors, and with no intention of vesting any beneficial interest in the money in the appellant, and therefore it was held upon a secret trust for Goodwin's benefit. The defendant Goodwin in his answer alleged that the execution of Exhibit C was obtained by the fraud of the plaintiffs. The evidence was conflicting on the issue, and the trial court found in favor of the plaintiffs. The appellant tendered no such issue by his answer. All of the findings complained of are fairly sustained by the evidence. It follows that the court did not err in refusing to make requested findings which were inconsistent with those found.

2. The next group of alleged errors raise the question whether the findings of fact sustain the court's conclusion of law. The appellant contends that they do not, because the money arising from the sale of Goodwin's land was exempt from seizure or appropriation for his debts; hence the plaintiffs were not prejudiced by the assignment of the fund to the appellant.

The claim of exemption is here made only by the appellant, and is based upon the act of Congress approved February 8, 1887, and acts amendatory thereof. 24 St. 388, c. 119, providing for the allotment of land in severalty to reservation Indians. This act pro-

vides, in effect, that there should be issued to each allottee a patent for his land, to be held in trust by the United States for twenty-five years for the use of the allottee, and at the expiration of that period the land should be conveyed by patent to him in fee, "discharged of said trust and free of all charge or incumbrance whatsoever." This act was amended on June 21, 1906, as to allottees on the White Earth reservation (34 St. 353, c. 3504) so as to provide that "all restrictions as to sale, incumbrance or taxation for allotments within the White Earth reservation in the state of Minnesota, now or hereafter held by adult mixed-blood Indians, are hereby removed, and the trust deeds heretofore or hereafter executed * * * are hereby declared to pass the title in fee simple." This act of June 21, 1906, also contained a general amendment (34 St. 327) to this effect: "No lands acquired under the provisions of this act shall, in any event, become liable to the satisfaction of any debt contracted prior to the issuing of the final patent in fee therefor." "That no money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period, or in case of a minor, during his minority, except with the approval and consent of the secretary of the interior."

This refers generally to allotments to Indians on all reservations, while the amendment, which follows it, deals exclusively with allotments on the White Earth reservation. Goodwin, by virtue of this last amendment, became, on June 21, 1906, the owner in fee of the land in question, and all restrictions as to sale or incumbrance were removed, and the trust as to his land terminated on June 21, 1906. The plaintiffs' judgment was not obtained until November 19 next following. It does not appear from the findings, nor from any admission in the pleadings, when the debt or claim was contracted which is the basis of such judgment. It follows that this case does not fall within the second paragraph of the general amendment. Nor does it fall within the first paragraph thereof, for it exempts only the land, not the proceeds of a voluntary sale thereof. Goodwin sold his land on December 20, 1906, and the fund here in con-

troversy is a part of the purchase price thereof. The case falls, then, within the rule that, in the absence of a statute to the contrary, where property exempt from execution is voluntarily sold for money, or other property not exempt, the proceeds of the sale are not exempt. 18 Cyc. 1443. We accordingly hold that the fund here in question was not exempt from execution at the time the colorable assignment thereof was made to the appellant.

It is, however, claimed that the plaintiffs are bound by a concession to the contrary made by their attorney on the argument of appellant's motion for judgment on the pleadings. The alleged concession was this: "Mr. Rowe: I take it that the proceeds arising from the sale of this land of the defendant Goodwin to the Wild Rice Lumber Company is exempt. Mr. Hendricks: Yes." This is not a stipulation of facts, which, if relied upon, would be binding upon the parties and the court, but simply an assent to a legal proposition suggested by appellant's attorney in a running debate of the question of the sufficiency of the complaint before any evidence was taken, and it cannot be treated as a stipulation as to the law of the case, binding the plaintiffs and the court.

We are of the opinion, and so hold, that the facts found by the trial court sustain its conclusion of law. The case of Jones v. Rahilly, 16 Minn. 283, (320), relied upon by the appellant, is not here in point; for in that case the plaintiff was only a contract creditor and the action strictly a legal one.

3. The last group of alleged errors relate to the rulings of the trial court as to the admission of evidence. We have considered them, and find that none of them was reversible error.

Order affirmed.