**In re Clarence R. EHRICH, Debtor.**

**Bankruptcy No. 3–89–663.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 14, 1990.

C. Stephen Rowley, Redwood Falls, Minn., for debtor.

Mark C. Halverson, Mankato, Minn., pro se.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF HOMESTEAD EXEMPTION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court at Mankato, Minnesota, on June 27, 1989, for hearing on the Trustee's objection to Debtor's claim of exemption. Chapter 7 Trustee Mark C. Halverson appeared *pro se*. Debtor appeared by his attorney, C. Stephen Rowley. Upon the moving documents, record made at hearing, and all of the other files and records in this case, the Court sustains the Trustee's objection.

### FINDINGS OF FACT

Debtor is a retired farmer who filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 23, 1989. On that date, he lived on a 117-acre tract of land in Faribault County, Minnesota. On June 1, 1988, Debtor and his wife, Bertha Ehrich, as named vendors, and James Ehrich and Sheila Ehrich, as vendees, had entered into a contract for deed for the sale of this tract;[1] before then, he (and, possibly, his wife) had owned it in fee.[2] The contract for deed was on the standard Minnesota form prescribed by statute. Under Paragraph 20 of that form, "Additional Terms," the parties recited: "It is acknowledged by all parties that Clar-

ence R. Ehrich and Bertha Ehrich shall retain a life estate in the property subject herein." The contract for deed provided for a purchase price of $54,000.00, payable with 8 percent interest on the outstanding principal, in annual installments of 47,862.-04, due on November 15 of each year commencing in 1988. A final balloon payment is due on November 15, 1998. The contract has been filed in the office of the Faribault County Recorder.

In his original Schedules A–2 and B–1, Debtor stated the value of this homestead tract as $117,000.00, and noted that it was subject to a mortgage in favor of Metropolitan Insurance Companies ("Metropolitan") to secure a debt with a stated balance of $17,671.00. Debtor did not reveal the existence of the contract for deed on the face of his bankruptcy schedules, instead wording the entries as if he still held a full fee-simple interest. He claimed his interest in the tract as exempt pursuant to MINN. STAT. § 510.01 *et seq.* to the extent of its full stated value of $117,000.00.

In an amended Schedule B–2 filed on May 11, 1989, Debtor noted that he held a life estate in the homestead and an additional 160-acre parcel under Item v. (the title of which is "Equitable and future interests, life estates and rights or powers exercisable for the benefit of the debtor ...."). Debtor did not amend his claim of exemptions to conform it to the recitation in the amended Schedule B–2, until he filed an amended Schedule B–4 on August 7, 1989.[3] Debtor has never specifically sched-

---

**1.** Another person, purporting to be attorney-in-fact for Bertha Ehrich under a power of attorney, executed the contract for deed on her behalf.

**2.** There is no conclusive evidence of record as to whether Debtor and his wife had held title as joint tenants, or whether Debtor alone held the record title and his wife's interest was limited to an inchoate marital interest under MINN. STAT. §§ 507.02 and 524.2–201. The issues framed in the present proceeding do not require a final adjudication on this point, though the parties might have to address it in some future proceeding to determine the value or extent of the estate's rights. All further references to ownership in this order shall be to Debtor alone, as his

property interests are the only ones at issue in this case. Such references shall not evidence any conclusion that Debtor's wife does *not* hold a record title interest in the real estate. She may or may not, but the only firm conclusion which can be made on this record is that she has at least an inchoate spousal interest under Minnesota law.

**3.** This amended Schedule B–4 recites that "[s]aid property is secured by the Federal Land Bank of Mankato debt in the amount of $245,-149.00 (see Schedule A–2—Creditors Holding Security)." This is probably an error; Debtor's Schedule A–2 notes that the 160-acre *non-homestead* tract is fully encumbered by a mortgage securing a debt owing to the Federal Land Bank

uled his vendor's interest in the contract for deed as a real or personal asset, whether exempt or non-exempt; nor has he claimed it as exempt.

Debtor's Chapter 7 Trustee timely filed an objection to the first amended claim of exemption on May 18, 1989. In his written objection, he summarized the status of Debtor's interest in the property, conceded that "the life estate is likely exempt," and asserted that Debtor's vendor's interest under the contract for deed was not protected by the state homestead exemption statute, being in the nature of an account receivable, rather than an interest in real estate.

## DISCUSSION

■ Under the June 1988 contract for deed, Debtor legally obligated himself to convey the fee title to the tract to the vendees when the vendees have paid the full purchase price. That fee title will be subject to a reserved life estate. Thus, under the contract, Debtor is obligated to split his fee ownership into two component property interests when he gives the deed contemplated by the contract.

Under current practice in Minnesota, contracts for deed are usually used as a form of private, seller-furnished, purchase-money financing for real estate purchases. As a result, the standard Minnesota forms for a contract for deed contain several terms which reflect an assumption that the vendee shall enjoy physical possession during the term of the contract. *See* Uniform Conveyancing Blanks, Forms Nos. 54–M through 57–M (prescribed by Minnesota Department of Commerce via MINN. R. pt. 2820.0010). Here, the situation is different; Debtor and his wife will continue to occupy the tract until the vendees have completed payments to them. At that point, they will be obligated to give a warranty deed to the vendees. The life estate which Debtor will reserve—which will be free of any claims other than the Metropoli-

tan mortgage—is a right to exclusive use, possession, and occupancy of the real estate during the cumulative terms of the remainder of the natural lives of Debtor and his wife. *Denzer v. Prendergast*, 267 Minn. 212, 126 N.W.2d 440 (1964); C. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY at 59–60 (1962). The vendees will hold fee title subject to the life estate until the later of the deaths of Debtor and his wife. At that point, the vendees will succeed to the full rights of a fee owner, including the rights of possession and use.

The Trustee's analysis of the respective rights of Debtor and the estate is correct in result, if not entirely accurate in theory. He categorizes Debtor's present interest in the real estate as a life estate. As noted, this is not the case; Debtor's life estate will not come into existence until Debtor executes the warranty deed which formally reserves the life estate. As of the date of his bankruptcy filing, Debtor's rights were those of a vendor under a contract for the sale of the fee interest in the property— that fee interest to be ultimately qualified and limited by the reservation of a life estate.

During the term of the contract, Debtor holds legal title to the tract as security for the vendees' performance under the contract for deed. *In re Petition of S.R.A., Inc.*, 219 Minn. 493, 507, 18 N.W.2d 442, 449–50 (1945), *aff'd*, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851 (1946); *Gilbert Builders, Inc. v. Community Bank of DePere*, 407 N.W.2d 706, 708 (Minn.App.1987), *rev. den.* (Minn. August 19, 1987); *Friberg v. Fagen*, 404 N.W.2d 400, 403–04 (Minn.App.1987). Under the contract and the understanding of the parties to it, Debtor enjoys the right of current possession. This combination of rights in and arising from the real estate itself, albeit less than a full fee interest, is protectible under the Minnesota homestead exemption statute,[4] as long as Debtor met

of Mankato, but makes no reference to the homestead tract being encumbered by that debt.

4. MINN. STAT. c. 510 provides, in pertinent part:
510.01 Homestead defined; exempt; exception

The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and shall be

the occupancy requirement as of his bankruptcy filing. MINN. STAT. § 510.04 ("Any interest in the land, whether legal or equitable, shall constitute ownership, within the meaning of this chapter ..."). *See also In re Emerson,* 58 Minn. 450, 60 N.W. 23 (1894) (recognizing tenancy for years as subject to homestead protection); *Baer v. Huesman,* 381 N.W.2d 73 (Minn.App.1986) (recognizing a "substantial equitable interest," evidenced only by long-term occupancy under oral agreement to live on and work a family farm titled in a parent's name, as subject to homestead protection). There is no evidence that Debtor did not actually "occupy" the land as of the date of his bankruptcy filing, in the sense of maintaining "use, tenure, and possession" over it at that time. *See Tillotson v. Millard,* 7 Minn. 513 (Gil. 419) (1862). The Court finds that he did. *Cf. In re Sikkink,* 60 B.R. 298 (Bankr.D.Minn.1986). As a result, Debtor's present right to possession is exempt from the bankruptcy estate. The Trustee acknowledges as much.[5]

▮ The conclusion is different, however, as to Debtor's contractual rights as vendor. Debtor has a right to receive a purchase price in installments over time, in consideration for his eventual conveyance of the fee title to the tract. In the time-worn law school metaphor, he is selling a "bundle of rights" to the vendees. In the factual aspects of its temporal scope and access to possession, that bundle of rights is similar to that of a remainderman under a conveyance-for-life to a third party. The terms of the contract for deed will reserve to Debtor and his wife the full personal benefit of the homestead for their lives,

while transferring all other legal interests in the property for a consideration. Debtor's present contractual right to a stream of payments on account of the future conveyance is not in itself a legal interest in the land, even though Debtor continues to hold legal title as security for those payments.

Debtor has contracted to sell a "bundle of rights" for a price, and has reserved an additional "bundle of rights" which the Court recognizes as an exempt homestead under the statute. The inquiry could well end here, and with some justification the vendor's interest could be found non-exempt without further discussion. The underlying purpose of the homestead exemption laws—"of secur[ing] to the citizen against all the misfortunes and uncertainties of life, the benefits of a home"[6]—arguably has been met by preserving Debtor's right to occupancy for life.[7]

However, the provisions of MINN. STAT. §§ 510.01–.02 do not provide the sole statutory governance for claims of homestead exemption. MINN. STAT. § 510.07 provides, in pertinent part:

> The owner may sell and convey the homestead without subjecting it, *or the proceeds of such sale for the period of one year after sale,* to any judgment or debt from which it was exempt in the owner's hand.

(emphasis added). The Minnesota Supreme Court has criticized this provision as allowing a debtor to make a "double exemption" claim to both a currently-occupied and -owned homestead, and the proceeds of sale of a former homestead. However, in deference to the policy-making role of the state

---

exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing ...
510.02 Area, how limited
The homestead may include any quantity of land not exceeding 160 acres, and not included in the laid out or platted portion of any city ...

**5.** 11 U.S.C. §§ 522(b) and 541(a) establish that the estate's claims against property of the debtor are gauged by the status of ownership interests as of the date of the debtor's bankruptcy filing. Thus, it is legally irrelevant to this case whether the life estate which Debtor and his wife will eventually reserve would be exempt. The broad

scope of MINN. STAT. § 510.04 establishes that, after its creation, the life estate will be exempt from claims of creditors, that exemption again subject to actual occupancy by the life tenant(s). *See also Gowan v. Fountain,* 50 Minn. 264, 52 N.W. 862 (1892).

**6.** In the language of *Ferguson v. Kumler,* 27 Minn. 156, 159, 6 N.W. 618, 619 (1880).

**7.** *See* discussion in *In re Miera,* 104 B.R. 989, 994–5 (Bankr.D.Minn.1989), which recognizes much the same policy consideration in a different context.

legislature, that Court has fully applied and enforced the provision according to its terms. *See O'Brien v. Johnson*, 275 Minn. 305, 148 N.W.2d 357 (1967) (*"O'Brien v. Johnson I"*). While this case involves a sort of "double exemption" claim different from that made in *O'Brien v. Johnson I*, the broad language of the statutes clearly allows Debtor to invoke them to try to support that claim.

There is no reported case on point, where a court applies MINN. STAT. § 510.07 to a situation where a debtor has contracted to sell the fee interest in his homestead under terms which will reserve the debtor a life estate.[8] Had Debtor conveyed his homestead via a cash sale within the year before his bankruptcy filing, MINN. STAT. § 510.07 would protect all proceeds of that sale in his possession as of the filing. *Johnson v. Brajkovich*, 229 Minn. 529, 532–33, 40 N.W.2d 273, 275 (1950). This, however, is not the case here. Debtor has contracted to receive the sale price for the fee title in the homestead over time.

Because the statute protects the proceeds of sale for only a fixed period of time after the sale, the central question is when Debtor's "sale" of his homestead took place for the purposes of MINN. STAT. § 510.07. If that "sale" occurred upon the execution of the contract for deed, the stream of payments to which Debtor is entitled under the contract is exempt only to the extent of those payments made or payable within one year of that sale. If, on the other hand, the "sale" will take place only upon the final payment under the contract and/or the transfer of legal title, Debtor's right to receive the consideration for that sale is exempt from claims of creditors for one year after those events—

conceivably up to November 15, 1999, or even thereafter.

Given the legal character of Debtor's interests under the contract for deed, this question must be answered adversely to him. The analysis which compels this result is a two-step process.

First, the statute itself clearly distinguishes between a "sale" and a "conveyance." MINN. STAT. § 510.07 establishes the right of a debtor to "sell *and* convey" (emphasis added) an exempt homestead with impunity to any enforcement of collection process against the homestead itself, whether at or after the sale. It also protects the proceeds of an exempt homestead for one year after its "sale." The latter provision does not refer to the conveyance of legal title. as an event which triggers either the substantive protection for any of the fruits of that conveyance, or the procedural "window" of a one-year period for the untrammelled reinvestment or disposition of those proceeds. The structure of the statutory language itself suggests that the legislature intended to distinguish between a "sale" and a "conveyance," for purposes of the sale-proceeds exemption—by negative inference if by no other means.

Second, the legal relationship of the parties to the present contract for deed fixes the date of their "sale" as June 1, 1988, upon the execution of the contract. The contract obligates the vendees to pay the real estate taxes chargeable against the homestead for 1988 and all successive years, evidencing the parties' intent to transfer valuable property rights to them in 1988. Under the contract Debtor holds a legal status analogous to that of a creditor under a contract secured by a real estate mortgage. *In re S.R.A., Inc.*, 213 Minn.

---

**8.** The only reported case with any factual similarity is *O'Brien v. Johnson*, 294 Minn. 482, 200 N.W.2d 32 (1972) (*"O'Brien v. Johnson II"*), which involved a judgment debtor's gift conveyance of the fee title to her homestead to her children with a reservation of a life estate. In that decision, the Minnesota Supreme Court seems to have assumed without discussion that the judgment debtor was entitled to claim a homestead exemption in her life estate. Citing the judgment debtor's freedom of alienation with impunity to the attachment of judgment liens which was granted by MINN. STAT. § 510.07, and declining to override the explicit governance of the statute by invoking equitable powers, the Court affirmed the trial court's nullification of an execution sale of the fee interest as it stood in the hands of the children. These facts distinguish *O'Brien v. Johnson II* from the present case; here, the debtor has not made an outright gift of the fee-subject-to-life-estate, but has retained the right to receive the value of it and is receiving that value over time.

487, 495, 7 N.W.2d 484, 488 (1943) (quoting *Summers v. Midland Co.*, 167 Minn. 453, 455, 209 N.W. 323, 324 (1926)). He holds bare legal title to the homestead tract as security for the vendees' payment of the purchase price to him. *In re S.R.A., Inc.*, 219 Minn. at 507, 18 N.W.2d at 449–50. His rights are in the nature of those of a mortgagee; the full fee interest in the underlying real estate may re-vest in him if he exercises his remedy of cancellation upon the vendees' default, but in the absence of these events, he does not hold an interest in the nature of an estate in real property. *Id.* As of his bankruptcy filing, then, he held no more than a contract right to payment of the price for purchase of the fee, as to all of the value in the property other than his cumulative rights to possession and use. The equitable ownership of the real estate, (or, in alternative phraseology, the equitable estate in it) passed to the vendees upon the execution of the contract. *In re S.R.A., Inc.*, 219 Minn. at 507, 18 N.W.2d at 449–50; *First & Am. Nat'l Bank of Duluth v. Whiteside*, 207 Minn. 537, 542–43, 292 N.W. 770, 775 (1940); *Minn. Bldg. & Loan Ass'n v. Closs*, 182 Minn. 452, 454, 234 N.W. 872, 873 (1931).

Debtor thus having divested himself of the "equitable ownership" of the homestead on June 1, 1988, it is clear that a "sale" to the vendees took place on that date for the purposes of MINN. STAT. § 510.07. As a result, only those periodic payments which were actually received by Debtor by June 1, 1989, were exempt from the bankruptcy estate. As there were no payments due or made between Debtor's bankruptcy filing and that date, the statutory sale-proceeds exemption does not apply under the facts of this case. All payments actually made or payable after June 1, 1989, are not reserved to Debtor under the Minnesota homestead exemption laws, and are property of the bankruptcy estate.

One final point deserves attention. At oral argument, Debtor's counsel assert-ed that the parties to the contract had structured it as a form of "estate planning" in the probate-avoidance sense, to allow Debtor and his wife to use the sale proceeds to meet their personal needs for support over the term of the contract. He requested that the Court use its equity powers to recognize the proceeds as exempt based on this intended use, and the correspondence between that use and the humanitarian goals of the homestead exemption laws. Aside from the fact that Debtor has presented no evidentiary record upon which to make such a ruling, the Court cannot accede to the request. As a general rule, where an exemption is based on the character of property, the cash proceeds of that property, or property of a different character which is purchased with such proceeds, does not enjoy a derivative exemption. *Stephenson v. Lohn*, 115 Minn. 166, 171, 131 N.W. 1018, 1019 (1911).[9] The Minnesota Supreme Court has articulated the rationale for this rule:

> That claim [of derivative exemption] we cannot allow because we must take the statute as we find it and are not at liberty to add to it by a process which if indulged in would be an amendment and, in effect, judicial legislation.

*Ross v. Simser*, 193 Minn. 407, 409, 258 N.W. 582, 583 (1935). Recognizing a derivative exemption for sale proceeds in this case would be a creation out of whole cloth, resulting in protections which would be much broader than those allowed under MINN. STAT. § 510.07. As such, it would be nothing more than an impermissible exercise in judicial legislation. This would be so even if one fully acknowledged the parties' intentions and circumstances and the asserted use of the proceeds, actual and contemplated.

IT IS THEREFORE ORDERED:

1. That the Trustee's objection to Debtors' claim of exemption in his homestead real estate legally described as:

---

9. MINN. STAT. § 550.37 subd. 9, which grants an exemption for "[a]ll money arising from any claim on account of the destruction of, or damage to, exempt property," is of course in derogation of this common-law rule. It is limited by its terms to the cash proceeds of property and casualty insurance claims, or, perhaps, to proceeds of property-damage claims against liable third parties.

All that part of the Southeast Quarter (SE ¼) of Section Twenty-three (23), Township One Hundred One (101) North of Range Twenty-seven (27) described as follows: Commencing at a point 9 rods north of the Southeast corner of the Southeast Quarter of said Section Twenty-three (23), thence north 11 rods; thence west 10 rods; thence south 20 rods; thence east 1 rod; thence north 9 rods; thence east 9 rods to the place of beginning, containing .75 of an acre.

in Faribault County, Minnesota, is sustained, as to all of Debtor's claims to that real estate or its value, other than his claim to present possession and to a life estate therein.

2. That Debtor's rights under the June 1, 1988 contract for deed for sale of that real estate to James Ehrich and Sheila Ehrich, and in particular the right to receive all payments of the purchase price of that real estate after June 1, 1989, are property of Debtor's bankruptcy estate, and shall be administered by the Trustee for the benefit of claimants against the estate.

3. That, to the extent he received a payment from James and Sheila Ehrich on or after November 15, 1989, pursuant to the June 1, 1988 contract for deed, Debtor shall turn the monies so received over to the Trustee by March 30, 1990.