HATTIE E. HULL *vs.* EQUITABLE ACCIDENT ASSOCIATION.

July 15, 1889.

Accident Insurance—Condition against Being on Platform of Moving Train.—A contract of life and accident insurance excepted from the risks covered by it injuries resulting from being upon the platform of moving cars, or from attempting to enter or leave such cars in motion; this exception not being applicable, however, to the exposure of railway employes in the performance of their duty. The assured, a shop-hand of a railway company, while being carried homeward from the shop at the close of the day's work, upon one of the company's trains, went out upon the platform while the train was in motion, intending to get off when it should stop for the purpose of crossing over, by a switch, to another track. He was thrown off, and killed. *Held*, that the case was within the specific exceptions in the contract, and the insurer was not liable.

Appeal by plaintiff from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial after a dismissal ordered at the trial. The action was to recover $3,000 on an insurance certificate issued by defendant.

*John D. O'Brien*, for appellant.

*Flandrau, Squires & Cutcheon*, for respondent.

DICKINSON, J. This plaintiff is the widow of one Edward A. Hull, who was killed under the circumstances to be hereafter stated. He had entered into a contract with the defendant, by the terms of which

the latter insured him from death or disability from accidental causes, this plaintiff being named in the contract as the beneficiary in case of his death.    At the trial, when the plaintiff's case was closed, the court granted a motion to dismiss the action, for the reason that the accident and death occurred under circumstances bringing the case within the express exceptions in the contract as to the liability of the defendant.    The question now is whether a case was presented upon which a recovery could have been sustained.

The only condition of the contract to which it will be necessary to particularly refer is this: "The member herein named is required to use due diligence for personal safety and protection.    Standing, being, or riding upon the platform of moving railway coaches, (other than street-cars,) or riding in any other place not provided for the transportation of passengers, or entering or attempting to enter or leave any public conveyance using steam as the motive power, while the same is in motion, or walking or being on the road-bed or bridge of any railway, are hazards not contemplated or covered by this certificate, and no sum shall be paid for loss of life or disability in consequence of such exposure happening to any person other than a member who is an employe on the railway on which, in the performance of his duty, the said injury shall have been sustained; but any person shall be permitted to travel for health, recreation, or business, as a passenger, in the usual manner, by any private or public conveyance, without prejudice."    The case made by the plaintiff may be thus stated:    The deceased was a tin and copper-smith and pipe-fitter, employed as such in the car-shops of the Northern Pacific Railroad, four or five miles from the railway depot in St. Paul.    The railroad company daily carried its shop employes from the city to these shops and back again, by a train used for that purpose.    On the evening when this accident occurred, the shop-hands, with one Barber, the master car-builder of that road, left the shop in their train for the city.    The track being obstructed by a wreck at a certain point, they left their train, and Barber took a number of the men, including the deceased, into a coach of an empty train, which was about to run from the car-yard where such trains were made up to the Union depot, in the city, to receive passengers for its westward trip over the

road. Barber had general authority, which justified his taking the men on this train. He had kept the deceased and some others with himself, thinking that he might undertake, with their assistance, to clear the wreck from the track. He concluded, however, to let the men proceed to their homes, and informed the deceased that the train upon which they had embarked would make two stops at designated points, for the purpose of switching over to another track, and that he could get off at either of those places, which would leave him nearer to his home than if he went to the depot. It was known to the deceased that the train would stop only an instant at the points named —only long enough for a switch to be turned, and the direction of the movement of the train to be reversed. The train was running backward. It consisted of the engine, baggage car, second-class car, passenger coach, and two sleeping coaches, and a switch-engine in the rear of these. These men were in the passenger coach. As the train was approaching the place where it was first to stop, but while it was still moving at the rate of from four to six miles an hour, the deceased went out on the platform between the car he was on and the second-class car, and closed the door after him, for the purpose of getting off when the train should stop, and just then he was thrown or fell from the platform. Both feet were cut off, and an injury received upon his head. No one saw the accident, and the only explanation given in the case concerning it consists of the statement of the deceased immediately after it occurred. He said: "I turned around some way, and lost my balance, (or lost my hold,) and I fell, and struck something." And again he said: "I had hold of the door knob, and a jerk or something,—I fell off." The train passed over a distance of some 240 feet after he fell off before it was stopped, and even then its stopping was hastened by the discovery of the accident by the engineer; so that it is perfectly apparent that the train was not just upon the point of stopping when the deceased went out on the platform. It had already become dark when the accident occurred.

It is impossible to avoid the conclusion which led the trial court to dismiss this action. The case upon its face conclusively shows that the conduct of the assured, to which the accident must be directly at-

tributed, was such as, by the express and unambiguous terms of the contract, exempted the defendant from liability.   The case is not controlled by the general principles of the law of negligence, but by the clear, express terms of the contract upon which the action is brought. The conduct of the deceased was within the agreement that "standing, being, or riding upon the platform of moving railway coaches, * * * or entering or attempting to enter or leave any public conveyance using steam as a motive power, while the same is in motion, * * * are hazards not contemplated or covered by this certificate, and no sum shall be paid," etc.   Whether the deceased went upon the platform with the intention of getting off at once, before the train should stop, or of remaining upon the platform until the train should stop, the case was unquestionably within the prescribed conditions which exempted the insurer from responsibility.   It was a voluntary act, not prompted by any sudden emergency or necessity.   It may be that the stop at the switch was to be for so short a time that the assured could not, while the train remained motionless, go out upon the platform and get off.   However that may have been, the contract did not allow him to do as he did, at the risk of the insurer; and he should, if necessary, have remained on the train until it came to the depot.   The distinct terms of the contract cannot be made to yield, or cease to be operative, from considerations of mere convenience to the assured.

The general provision at the end of the paragraph, the whole of which we have before recited, cannot be construed as modifying this particular agreement as to the specified conditions and risks to which it is declared that the insurance shall not extend; and so, although it be considered that the assured occupied the relation to the railroad company of a passenger, there could be no recovery.   Nor would the case have justified a recovery by force of the clause excepting from the conditions before named "an employe on the railway on which, in the performance of his duty, the said injury shall have been sustained."   Even if the assured can be deemed to have been, in any proper sense, an employe of the railroad company at this particular time, his acts here in question were not done, nor the consequent injury suffered, "in the performance of his duty" as an employe of the

railroad company. What he did was wholly for his own purpose, for his own convenience, and in no sense a part of his service to the company. The order refusing a new trial must be affirmed.