# SADIE O'BRIEN v. WILFORD JOHNSON AND ANOTHER.

148 N. W. (2d) 357.

February 3, 1967—No. 39,911.

*Carl E. Erickson,* for appellants. ·

*Ryan, Ryan & Ebert* and *C. A. Ryan,* for respondent.

UPON REARGUMENT

OTIS, JUSTICE.

Plaintiff O'Brien has brought this action against defendants Johnson to secure an adjudication that property she owns in the city of Brainerd is her homestead and as such exempt from the claims of defendants who are judgment creditors. Defendants have counterclaimed, praying for a determination that their judgments are liens on plaintiff's property and seeking the right to levy execution on it. Defendants appeal from a judgment declaring the property to be the homestead of the plaintiff and exempt from execution.[1]

On October 3, 1955, Mrs. Johnson sustained personal injuries while a guest on premises owned by Mrs. O'Brien and her husband, Cornelius O'Brien. On October 22, 1955, the Johnsons sued the O'Briens for damages. During the next 2 months the O'Briens conveyed to their children real estate they owned in Brainerd, including the subject of this litigation (for convenience called the Juel Block), as well as real estate in Ironton, Deerwood, and Baxter. They retained, as their homestead, property referred to as "the Stiles Addition."

The Johnsons' tort actions resulted in verdicts on January 16, 1958, amounting to $96,300, of which only $11,021.35 has been paid in satisfaction of their claims.

A motion for judgment n. o. v. or a new trial was denied on February 9, 1959, and on March 5 the court ordered judgments in favor of the Johnsons, subject to a 10-day stay. On March 10 the O'Briens appealed from the order and the court further stayed the entry of judgment on bonds of $250 each. The following day the O'Brien children reconveyed the Juel Block to Cornelius O'Brien and Sadie O'Brien as joint tenants, and on March 14 the elder O'Briens occupied an apartment in the Juel Block as their residence. Meanwhile, on March 13 they had contracted to sell the homestead they formerly occupied in the Stiles Addition.

---

[1] A companion case seeking similar relief was argued at the same time this matter was heard. Johnson v. O'Brien, 275 Minn. 28, 144 N. W. (2d) 720.

Although on the Johnsons' first application we refused to require appeal bonds in excess of $500 as a condition to further staying the entry of judgment (counsel having assured the court there was ample security), ultimately that relief was granted.[2] No supersedeas bond was ever furnished, however. The orders were affirmed by a divided court in Johnson v. O'Brien, 258 Minn. 502, 105 N. W. (2d) 244. Thereafter, following the death of her husband, Mrs. O'Brien commenced these proceedings as surviving joint tenant.

The defendants assert that the conveyances from the elder O'Briens to their children were in fraud of creditors; that the O'Briens were not entitled to a double exemption in both the Juel Block and the proceeds of the sale of the Stiles Addition; that the stay of judgment and failure to require a supersedeas bond in the tort action constituted prejudicial error; that Mrs. O'Brien is estopped from asserting any homestead rights in the Juel Block; that the property is subject to a constructive trust or equitable lien; and that the notice of lis pendens which they filed on February 27, 1956, is tantamount to an attachment.

The trial court found, among other things, that the conveyances from the elder O'Briens to their children were made with the grantees' knowledge that the grantors intended to defraud defendants; that the Juel Block had a market value of $80,000; that the O'Briens occupied it as their homestead on March 14, 1959; and that except for the availability of other property previously referred to, having little value, the establishment of the Juel Block as plaintiff's homestead rendered her insolvent. The court concluded that Mrs. O'Brien was entitled to retain the Juel Block free from the claims asserted by the Johnsons.

■ Much of defendants' argument is devoted to the sequence of events which frustrated their imposing liens on the Juel Block. While it is true that in spite of the diligent and persistent efforts of counsel to satisfy the just claims of his clients the O'Briens succeeded in establishing their homestead during the period when the stay of judgment without an adequate bond prevented the liens from attaching, nevertheless we

---

[2] Johnson v. O'Brien, 256 Minn. 587, 99 N. W. (2d) 465.

find no fraud in their availing themselves of the order which the trial court had jurisdiction to grant as a routine discretionary matter.

In our opinion the failure to provide a supersedeas bond and the assurances by counsel that the O'Briens had ample security are circumstances which could not result in prejudice to the Johnsons since they did not occur until after the O'Briens had occupied the Juel Block.

■ The defendants have argued with justification that the transfer of the Juel Block from Cornelius O'Brien to his children was an attempt to defraud creditors. However, it does not follow that the ultimate vesting of title in Mr. and Mrs. O'Brien, Sr., was also fraudulent. The reconveyance from the children to their parents rendered that issue moot since it accomplished the very end which the defendants sought. In any event, the Johnsons were not prejudiced by the transfers since they would have had no greater rights against the elder O'Briens had title remained in their names. No lien could have attached to the Juel Block under any circumstances until the Johnsons' right to enter judgment ripened on March 5, 1959. The basic question then is whether judgment debtors can lawfully surrender an existing homestead and establish a new one in property which they then own and which has substantially greater value, with intent thereby to put their assets out of the reach of creditors and render themselves insolvent.

Under Minn. Const. art. 1, § 12, "[a] reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." Minn. St. c. 510 as it applies to this case provides that a house occupied by a debtor as his dwelling and the land on which it is situated, up to one-third of an acre, constitute his homestead and that of his family, exempt from seizure or sale for any of his debts.[3]

It has long been the law of this state that a judgment debtor may assert an exemption for the express purpose of evading his creditors. This we have held is not fraud, regardless of the debtor's motive.[4] The rule

---

[3] Minn. St. 510.01 and 510.02.

[4] Horton v. Kelly, 40 Minn. 193, 195, 41 N. W. 1031; Neumaier v. Vincent, 41 Minn. 481, 43 N. W. 376; Thysell v. McDonald, 134 Minn. 400, 403, 159 N. W. 958, 960; Gale v. Hopkins, 165 Minn. 177, 206 N. W.

was applied and followed as early as Jacoby v. Parkland Distilling Co. 41 Minn. 227, 43 N. W. 52, where the debtor's wife sought a judgment declaring the claims of creditors not to be a lien on their homestead. The court rejected evidence offered by creditors to prove that the property in question was occupied in contemplation of insolvency and with intent to defraud them. Speaking through Mr. Justice Mitchell, this court held that "by moving into a house which he already owns, [the debtor] takes nothing from his creditors which the law secures to them, or in which they have any vested right. * * * [F]raud can never be predicated on an act which the law permits." 41 Minn. 229, 43 N. W. 52.

Defendants rely on Kangas v. Robie (8 Cir.) 264 F. 92, where the Federal court distinguished the Jacoby case. In Kangas the debtor secreted assets received from the sale of goods furnished by his creditors and with the proceeds purchased a homestead. The court found that the debtor was guilty of fraud which, it held, distinguished the case from Jacoby, since there the debtor already owned the property and did not acquire a homestead with assets realized from his willful failure to pay his just obligations.

Defendants cite two other cases as controlling: Small v. Anderson, 139 Minn. 292, 166 N. W. 340, and Nash v. Bengtson, 179 Minn. 7, 228 N. W. 177. Both cases, however, involve transfers of title in fraud of creditors, whereas in the instant case, as we have previously indicated, no prejudice resulted and whatever transfers occurred resulted in reconveyances restoring substantially the status quo. We therefore conclude that under well-established principles the O'Briens had a right to sell their existing homestead, occupy instead the more valuable Juel Block, and thereafter enjoy an exemption in it, notwithstanding their purpose was to prevent the Johnsons' judgments from attaching as liens.

■ Because the Juel Block is commercial property consisting of stores and apartments and has a value in excess of $100,000, yielding a gross

---

164; Schlecht v. Schlecht, 168 Minn. 168, 176, 209 N. W. 883, 886; Stricker v. Trullinger, 172 Minn. 547, 216 N. W. 231; Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266; First Nat. Bank v. Wilson, 234 Minn. 160, 163, 47 N. W. (2d) 764, 766; Wilson v. First Nat. Bank, 239 Minn. 550, 60 N. W. (2d) 69. See, also, Annotation, 161 A. L. R. 1292.

income of $1,600 a month (which is also exempt), the defendants urge us to follow the rule adopted in Anderson v. Shannon, 146 Kan. 704, 73 P. (2d) 5, 114 A. L. R. 200. There the Kansas court refused to recognize a homestead exemption in a commercial building used primarily for a theater, a result we would find manifestly proper and reasonable but for our statute. In the Jacoby case Mr. Justice Mitchell said (41 Minn. 231, 43 N. W. 53):

"* * * Unfortunately our statute fixes no limit as to value upon a homestead exemption. It must be confessed that such a law may be greatly abused, and permit great moral frauds; but this is a question for the legislature, and not for the courts."

For over one hundred years we have deplored the injustices which have arisen from the application of our statutory exemptions.[5] The purpose of the constitutional exemption as we see it is to render the family home secure, not to permit a debtor who already enjoys that protection to escape his just obligations by seeking refuge in valuable income-producing property of which his homestead is but a small part. Nevertheless, the law is so well settled that however distasteful it may be, we feel reluctantly compelled to apply it.[6]

■ Defendants protest what they assert is a double exemption resulting from the O'Briens' occupying the Juel Block as their homestead at a time when the proceeds of the Stiles Addition sale, amounting to $13,000, were also exempt. Under the provisions of Minn. St. 510.07, "[t]he owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands."

In Donaldson v. Lamprey, 29 Minn. 18, 22, 11 N. W. 119, 121, we

---

[5] Kelly v. Baker (1865) 10 Minn. 124 at 127 (154 at 157). See, 49 Minn. L. Rev. 93, 105, note 33.

[6] National Bank v. Banholzer, 69 Minn. 24, 71 N. W. 919; Lockey v. Lockey, 112 Minn. 512, 128 N. W. 833; Gale v. Hopkins, 165 Minn. 177, 206 N. W. 164; Cysewski v. Steingraber, 222 Minn. 221, 24 N. W. (2d) 266. "The homestead exemption law does not relieve one from his moral and legal obligation to pay what he owes." Denzer v. Prendergast, 267 Minn. 212, 216, 126 N. W. (2d) 440, 443.

held that to permit a plurality of exemptions was "a fraud upon the spirit of the statute." Undoubtedly § 510.07 was intended to conserve the proceeds realized from the sale of a homestead in order to make them available for the purchase or improvement of another dwelling.[7] However, no such limitation is contained in the statute and we are not at liberty to read one in. Where, as here, property already owned by the debtor is occupied as his homestead following the sale of a previous homestead, it strikes us that the statute perverts the purpose of the constitution when it permits concurrent and simultaneous exemptions in both the new homestead and the proceeds of the old, if the proceeds are diverted to wholly extraneous purposes and are not made available to creditors. We recognize that when both § 510.01 and § 510.07 are given effect they may operate as "a vehicle for fraud and rank injustice."[8] We therefore echo what our predecessors have said and urge appropriate legislation to correct the problem, but hold that under existing law defendants are entitled to no relief.[9]

---

[7] Prior to the amendment of our statute, Fred v. Bramen, 97 Minn. 484, 107 N. W. 159, held that the proceeds of a homestead sale, until invested in other exempt property, were subject to execution. On the other hand, in the absence of statute, a number of courts have held such proceeds exempt where the debtor's intent is to use them to acquire a new homestead. Field v. Goat, 70 Okla. 113, 115, 173 P. 364, 365, 1 A. L. R. 478, 482; Annotation, 1 A. L. R. 483; Millsap v. Faulkes, 236 Iowa 848, 850, 20 N. W. (2d) 40, 41, 161 A. L. R. 1252, 1254; Orange Brevard Plumbing & Heating Co. v. La Croix (Fla.) 137 So. (2d) 201, 206; 17 U. of Miami L. Rev. 99, 101; Note, 15 U. of Fla. L. Rev. 410, 413; Annotation, 46 A. L. R. 814.

[8] Esty v. Cummings, 75 Minn. 549, 554, 78 N. W. 242, 244. Homestead rights are intended as a shield and not a sword. Webster v. Rodrick, 64 Wash. (2d) 814, 816, 394 P. (2d) 689, 691.

[9] Of the 45 states which have some kind of homestead exemption, only 4 do not appear to impose any limit on value. Specifically, therefore, we recommend that a monetary limit be placed on exemptions, both as to the value of a homestead and the proceeds of its sale; that any part of a homestead which is used for commercial purposes be excluded from the exemption unless space which is actually a part of the owner's dwelling place is also used by him for his own business or professional purposes; that no exemption apply to income produced by a homestead; and that proceeds of

312

Other errors assigned by defendants do not, in our opinion, merit further discussion.

Affirmed.

The opinion filed on November 18, 1966, is withdrawn and the foregoing opinion filed in place thereof.

the sale of a homestead which are not committed to the purchase or improvement of a new homestead lose their exemption. Haskins, *Homestead Exemptions*, 63 Harv. L. Rev. 1289, 1291; Joslin, *Debtors' Exemption Laws: Time for Modernization*, 34 Ind. L. J. 355, 364; Rifkind, *Archaic Exemption Laws*, 39 Calif. State Bar J. 370, 374.