## IN RE PETITION OF WOLF LAKE CAMP, INC. v. COUNTY OF ITASCA.

252 N. W. 2d 261.

March 25, 1977—No. 46335.

*Fryberger, Buchanan, Smith, Sanford & Frederick, Harold A. Frederick,* and *Michael K. Donovan,* for appellant.

*Knetsch & Bang* and *James J. Bang,* for respondent.

Considered and decided by the court en banc.

YETKA, JUSTICE.

This case involves the assessment of real property for purposes of real property taxes under Minn. St. 273.13, subd. 4. The property involved is a private camp in Itasca County consisting of approximately 4,200 contiguous acres owned by a single owner.

The trial court classified 18 percent of the property as "real estate devoted to temporary and seasonal residential occupancy for recreational purposes" to be assessed at 33 1/3 percent of its market value, and the remaining 82 percent as "all other" land pursuant to Minn. St. 273.13, subd. 9, to be assessed at 43 percent of market value. Appellant property owner appeals from the judgment entered. We reverse.

The issue raised on appeal is whether for purposes of classifying "real property devoted to temporary and seasonal residential occupancy for recreational purposes" under Minn. St. 273.13, subd. 4, contiguous parcels of real property under the ownership of a single entity and devoted to a single purpose must be classified as a unit.

Appellant, Wolf Lake Camp, Inc. ("Camp"), is a private, nonprofit corporation. It owns and maintains 4,200 acres of property in Itasca County, Minnesota, for the recreational use of its seven shareholders, their families and guests. Each shareholder of the Camp uses the premises on a temporary basis throughout the year. Four of the seven shareholders have cabins at the Camp. There is an additional residential structure for members who have not built a cabin of their own, and also a cabin for the caretaker. All six structures are contained within a single part of the Camp. The remainder of the land is used exclusively for recreational purposes. The approximately 4,200 contiguous acres which make up the Camp are composed of about 3,200 acres of land and about 1,000 acres of lakes. The land owned by the Camp constitutes a square land mass about 4 miles by 4 miles.

The Camp property is listed in the Itasca County auditor's assessment book as 109 separate parcels. All descriptions in the assessment book come directly from deeds which are filed of record. The Itasca County assessor assessed the property as 109 different parcels. The trial court described the procedure as follows:

"In Itasca County, up to this point in time, the county auditor delivers to the county assessor pursuant to Minn. Stat. 273.03

the assessment books and blanks which lists separately each government subdivision or platted lot and where there are multiple owners of any such parcels the list is further broken down to show the portion thereof owned by each owner. In determining into which class real estate should be placed for tax purposes, the county assessor considers separately each item of property as submitted in the county auditor's list. This is his approach to the matter of classification whether the list describes the real estate on the basis of an entire government subdivision or platted lot or in portions only of either of the foregoing. The assessor then requires that each such item on the auditor's list possess each of three characteristics which he finds to be required by Minn. Stat. 273.13, Subd. 4 before he will accord it a class 3 classification. That is, he requires for class 3 (1) that the use be temporary and seasonal, (2) that it be for residential occupancy, and (3) that it be for recreational purposes. The fact that a parcel of land, here used in the sense of a government subdivision, is used for recreation purposes will not qualify it as class 3 property unless there is something thereon relatable to the seasonal residential occupancy of another parcel in common ownership even though such parcels may be contiguous. In this regard, he requires some structure reasonably necessary to the occupancy of the residence or some condition of the land such as maintenance of a lawn for the residence or of the roadway necessary for ingress and egress * * * before he will accord to such parcel without a residence the same class 3 classification as is always given to the parcel on which the residence is located."

Using this system for purposes of assessment in 1973 for taxes payable in 1974, the county assessor classified 12 of these parcels as class 3 real property devoted to temporary and seasonal residential occupancy under Minn. St. 273.13, subd. 4. This corresponded generally to the parcels on which the residential buildings are located. The assessor classified the remaining 97 parcels as "all other" land under Minn. St. 273.13, subd. 9, and assessed them at 43 percent.

The Camp then petitioned the district court pursuant to Minn. St. 278.01 claiming the assessor should have classified the entire Camp property as class 3 real estate devoted to temporary and seasonal residential property for recreational purposes. The trial court held the method of assessment used by the assessor met the statutory requirements. Using this standard, however, the trial court determined the assessor erred in failing to include 8 additional parcels as class 3 property.[1] Following an entry of judgment, the Camp appealed to this court.

A. *History of the Provision for Treatment of "Temporary and Seasonal Residential Occupancy for Recreational Purposes."*

The first provision for temporary and seasonal residential occupancy for recreational purposes was passed during the 1959 legislative session and became effective May 1, 1960. L. 1959, c. 338, § 1. It did not apply to commercial purposes. In 1971 "market value" was substituted for "full and true value." L. 1971, c. 427, § 3. The statute was amended to its present form in 1973 by the addition of commercial property. L. 1973, c. 774.

B. *Previous Judicial Interpretations of the Statute.*

This is the third case in which this court has been asked to interpret the application of Minn. St. 273.13, subd. 4. The pertinent part of that section provides:

"* * * All real property devoted to temporary and seasonal residential occupancy for recreational purposes, and which is not devoted to commercial purposes for more than 200 days in the year preceding the year of assessment, shall be class 3 property and assessed accordingly. For this purpose, property is devoted to commercial use on a specific day if it is used, or offered for use, and a fee is charged for such use."

Real property so classified is assessed as "class 3" property at 33 1/3 percent of market value.

---

[1] These represented parcels on which the roadway to the residences was located and also the land on which a grass landing strip was located.

The two previous cases in which this court interpreted Minn. St. 273.13, subd. 4, are Otis Lodge, Inc. v. Commissioner of Taxation, 295 Minn. 80, 206 N. W. 2d 3 (1972), and Lilja v. County of Wright, 307 Minn. 276, 239 N. W. 2d 465 (1976). In Otis, this court made four basic interpretations of the "temporary and seasonal residential occupancy for recreational purposes" language of Minn. St. 273.13, subd. 4. First, the use to which the land is put, not the inherent nature of the land itself is controlling; that is, the test is what the land is devoted to, not what it can be devoted to. Second, the words "devoted to" in the phrase "devoted to temporary and seasonal residential occupancy for recreational purposes" means "chiefly and not wholly." 295 Minn. 84, 206 N. W. 2d 7. Third, the word "seasonal" in the same phrase means "those periods of the year when recreational activities are practical and feasible because of climatic conditions." 295 Minn. 90, 206 N. W. 2d 10. Finally, any interpretation of the statute would in all likelihood apply to both commercial and private property.

In the second case, Lilja, this court held that residential city property used for an occasional weekend of relaxation and gardening was not devoted to "recreational purposes" within the meaning of the statute.

Thus, to come within the scope of the provision, the actual use of the real property must be chiefly for temporary residential occupancy for recreational use during those periods of the year when recreational activities are practical and feasible because of climatic conditions.

C. *Application of the Statute to Wolf Lake Camp, Inc.*

No serious question is raised that the *entire* Camp is used for recreational purposes. Nor is a serious question raised that *part* of the Camp is used for seasonal residential occupancy. However, the parties dispute the *unit* of classification. In upholding the decision of the assessor, the trial court held that there was no reason that just because one parcel or tract forming a part of the

unit ownership meets all three criteria of the statute that all other parcels or tracts owned by him must be similarly treated.

The key statutory section is Minn. St. 272.03, subd. 6, which defines "tract":

"Subd. 6. 'Tract,' 'lot,' 'parcel,' and 'piece or parcel' of land means any contiguous quantity of land in the possession of, owned by, or recorded as the property of, the same claimant or person."

To date, this court has not definitively interpreted the application of this definition in a case such as the present one.

In support of their position that the Camp must be classified as a unit, the Camp advances two arguments. The first is that the real property taxation statutes, when viewed as a whole, show the legislature has always expressly stated any size limitations on classifications if it so intended. In support they cite the homestead exemption contained in Minn. St. 273.135 and the possible apportionment required by Minn. St. 273.13, subd. 19.[2]

The second argument advanced by the Camp is that the method used by the assessor is based solely upon the timing of the owner's acquisition of the property. The Camp is assessed as 109 different parcels because it was purchased in 109 different pieces over a number of years. At present, however, all the parcels are contiguous and are being used as a unit for a single purpose by a single owner.

The County of Itasca, on the other hand, contends the absence

---

[2] Minn. St. 273.13, subd. 19, provides: "Residential real estate, other than seasonal residential, recreational and homesteads shall be classified as class 3d property and shall have a taxable value equal to 40 percent of market value. Residential real estate as used herein means real property used or held for use by the owner thereof, or by his tenants or lessees as a residence for rental periods of 30 days or more, but shall not include homesteads, or real estate devoted to temporary or seasonal residential occupancy for recreational purposes. *Where a portion of a parcel of property qualified for class 3d and a portion does not qualify for class 3d the valuation shall be apportioned according to the respective uses.*" (Italics supplied.)

of a specific statutory statement on the exact issue constitutes, by implication, approval of its method.

We find the arguments of the Camp persuasive for these reasons:

(1) *The absence of an express area limitation on the exemption.* When viewed as a whole, the Minnesota property taxation statutes indicate a clear decision by the legislature not to limit the area or value of the exemption. As the Camp points out, where the legislature has intended such a limitation it has supplied one. In the absence of an express limitation here it is not for this court to imply one. If the class 3 exemption is to be limited and the Camp thus taxed at a higher rate, the authority for that change should be clearly expressed. Cf., e. g., O'Brien v. Johnson, 275 Minn. 305, 148 N. W. 2d 357 (1967) (value of property used for homestead exemption).

(2) *Relationship of the system of classification used by the county auditor and the statute.* The purpose of the general statutory scheme here is to classify property according to *use.* However, the system used by the assessor turns almost exclusively on the *timing* of the acquisition of the land. Under the plan used in Itasca County, a person might purchase a single 40-acre plot, place a cabin on it, and if the property is then devoted to seasonal recreational use, qualify for a class 3 classification. Another person might purchase an equivalent 40-acre plot in four separate transactions, but because of the system used by the county would likely be assessed as four separate parcels. The use, area, and ownership of each might be equivalent, yet the second person could be assessed at a rate higher than the first. His taxes would depend in large part on the timing of the acquisition of the land and not the use to which the contiguous parcels are put. The classification system would thus bear little relation to the classification of land according to use. A simple conveyance out to another person who would then reconvey the land back as a larger unit without any change in use would likely change the tax.

To adopt the view of the county would also mean that one taxpayer could own one acre of land on which he built an elaborate lake home costing a half million dollars and yet have the entire parcel of land and buildings be assessed at only 33 1/3 percent. Another, as in this case, could own several thousand acres worth perhaps the same amount but have a small cottage worth very little located on one parcel. Under the theory of the county he would be assessed at a ratio of 33 1/3 percent on the cottage and one parcel, and be assessed at 43 percent on the balance. We do not believe the legislature intended such a result. See, Minn. St. 645.17, subd. 1. The county is not being unjustly and irrationally deprived of tax revenues by assessing the land on the basis of the 33 1/3-percent ratio.

As a final matter, although appellant has not raised a constitutional issue as to the classification of lands for taxation in Minnesota, we take note that under the position taken here by the county many part-time residents could be taxed at a much higher rate than full-time, year-round residents notwithstanding a substantially lower use of governmental services. Because of the homestead exemption and the less than 33 1/3-percent assessment for many types of rural, including agricultural, lands this disparity could well exist even though appellant prevails in this case and is assessed at 33 1/3 percent. The legislature must have been aware of the situation when it allowed this new classification for recreational use.

Reversed and remanded to the trial court with direction to enter judgment assessing all of appellant's property at 33 1/3 percent.

Reversed and remanded.