In re Kenneth J. THEISEN, a/k/a Kenneth Theisen, a/k/a Ken Theisen, a/k/a Kenny Theisen; fdba Long Lake Motors and fdba Montrose Sales, a/s/f Montrose Sales, Inc., Debtor.

Edward W. BERGQUIST,
Trustee, Plaintiff,

v.

Kenneth J. THEISEN, Defendant.

Bankruptcy No. 4–83–372.
Adv. No. 4–84–99.

United States Bankruptcy Court,
D. Minnesota.

Dec. 11, 1984.

Joseph W. Lawver, Edina, Minn., for trustee Edward W. Bergquist.

Richard J. Gabriel, St. Paul, Minn., for debtor.

## ORDER GRANTING SUMMARY JUDGMENT

ROBERT J. KRESSEL, Bankruptcy Judge.

This matter came on for hearing on the motion of the defendant for dismissal or summary judgment. Richard J. Gabriel appeared on behalf of the defendant Kenneth J. Theisen (debtor) and Joseph W. Lawver appeared on behalf of the plaintiff Edward W. Bergquist (trustee). Based on the files and records and the arguments of counsel I make the following:

## MEMORANDUM ORDER

The debtor has moved to dismiss the trustee's complaint on the grounds that it fails to state a claim against him upon which relief can be granted, presumably pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) made applicable to this proceeding by Bankruptcy Rule 7012(b), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56 made applicable to this proceeding by Bankruptcy Rule 7056. No affidavits were submitted by either party, presumably since the parties are in agreement as to what the facts are. The facts have not been presented very succinctly but I have been able to glean most of them from the file. Since I am concluding that judgment for the debtor is appropriate, I am basing my decision on the facts alleged in the plaintiff's complaint, conceded in its memorandum or on matters appearing in the Court's bankruptcy case file and properly subject to judicial notice pursuant to Federal Rule of Evidence 201.

## FACTS

1. On October 14, 1980, the debtor and his wife, Delores Theisen, conveyed the following two mortgages and contracts for deed to Gary K. Theisen, Daniel M. Theisen, Mark H. Theisen, Michael J. Theisen and Lorie D. Theisen:

a. Contract for deed dated May 2, 1975, between Kenneth J. Theisen and Delores Theisen, vendors, and John P. Hoffman and Diane M. Hoffman, vendees.

b. Mortgage and Mortgage Note dated May 3, 1974, between Kenneth J. Theisen and Delores Theisen, mortgagees and payees, and Hollywood Sports Complex, Inc., mortgagor and maker.

c. Mortgage and Mortgage Note dated December 13, 1978, between Kenneth J. Theisen and Delores Theisen, mortgagees and payees, and Edgar W. Gustafson and Elsie M. Gustafson, mortgagors and makers.

2. The conveyances described in paragraph 1 were made with the intent to defraud the creditors of Kenneth J. Theisen.

3. On October 15, 1980, Gary K. Theisen, Cynthia Theisen, Daniel M. Theisen, Cheryl Ann Theisen, Michael J. Theisen, Mark H. Theisen and Lorie D. Theisen encumbered the contract for deed and mortgages described in paragraph 1 by pledging them to the State Bank of Mound as collateral for a promissory note in the principal sum of $43,000.00.

4. The State Bank of Mound gave fair consideration and was without knowledge of the fraudulent intent of the Theisens at the time the loan was made.

5. On October 15, 1980, Kenneth J. Theisen and Delores J. Theisen conveyed the following real property, located in the State of Minnesota, County of Carver, to Gary K. Theisen, Daniel M. Theisen, Michael J. Theisen, Mark H. Theisen and Lorie D. Theisen:

The Northwest ¼ of the Southwest ¼ of Section 14, Township 117 North, Range 26 West except the North 793 feet of the

East 550 feet of the West 970 feet thereof and except also the West 420 feet of the North 355 feet thereof.

6. The conveyance described in paragraph 5 was made with the intent to defraud the creditors of Kenneth J. Theisen.

7. Gary K. Theisen, Daniel M. Theisen, Michael J. Theisen, Lorie D. Theisen, Cynthia Theisen, Mark H. Theisen and Cheryl Ann Theisen encumbered the property described in paragraph 5 by placing a $16,000.00 mortgage, securing a note of the same amount on the property, which note and mortgage were issued to Delores Theisen.

8. On October 15, 1980, a trial was commenced in Wright County District Court in which the State Bank of Delano was the plaintiff and Kenneth J. Theisen, among others, was a defendant.

9. On December 31, 1980, the State Bank of Delano was awarded judgment against Kenneth J. Theisen in the sum of $50,955.00.

10. While the mechanics are not clear, the debtor apparently received at least $36,294.07 of the proceeds of the assignment and mortgage described in paragraphs 3 and 7 and used that amount to prepay the contract for deed on his homestead.

11. Some time subsequently the State Bank of Delano commenced an action against the debtor, his wife Delores, Gary K. Theisen, Cynthia Theisen, Daniel M. Theisen, Cheryl Ann Theisen, Michael J. Theisen, Mark H. Theisen and Lorie D. Theisen pursuant to the Uniform Fraudulent Conveyance Act, Minn.Stat. §§ 513.20–513.32.

12. That action was tried to a jury in February 1983 which returned a special verdict on February 11, 1983.[1]

13. On May 16, 1983, the Carver County District Court made Findings of Fact setting out the facts in paragraphs 1 through 9 above, and further concluded that the defendants had violated Minn.Stat. §§ 513.-23 and 513.26, awarded the plaintiff reasonable attorney's fees in the amount of $17,739.25 and concluded that Gary K. Theisen, Cynthia Theisen, Daniel M. Theisen, Cheryl Ann Theisen, Michael J. Theisen, Mark H. Theisen and Lorie D. Theisen, as grantees of property with intent to defraud the creditors of defendant Kenneth J. Theisen, were jointly and severally liable to the plaintiff to the extent that they had placed the property of Kenneth J. Theisen beyond the reach of the plaintiff by encumbering the transferred property.

14. The Carver County District Court then ordered as follows:

"1. That Plaintiff, pursuant to Minnesota Statutes Section 513.28(1)(b), may disregard the conveyances made by Kenneth J. Theisen and Delores Theisen to their children, to wit:

A. Contract for deed dated May 2, 1975, between Kenneth J. Theisen and Delores Theisen, vendors, and John P. Hoffman and Diane M. Hoffman, vendees.

B. Mortgage and Mortgage Note dated May 3, 1974, between Kenneth J. Theisen and Delores Theisen, mortgagees and payees, and Hollywood Sports Complex, Inc., mortgagor and maker.

C. Mortgage and Mortgage Note dated December 13, 1977, between Kenneth J. Theisen and Delores Theisen, mortgagees and payees, and Edgar W. Gustafson and Elsie M. Gustafson, mortgagors and makers.

D. Real property located in the State of Minnesota, County of Carver, legally described as follows:

The Northwest ¼ of the Southwest ¼ of Section 14, Township 117 North, Range 26 West except the North 792 feet of the East 550 feet of the West 970 feet thereof and except also the West 420 feet of the North 355 feet thereof;

and attach, levy and have execution against said properties, subject to the interest of the State Bank of Mound, to

---

**1.** The jury's special verdict is not part of the files of this adversary proceeding.

satisfy its judgment against Kenneth J. Theisen.

2. That the note and mortgage in the principal amount of $16,000.00 issued to Delores Theisen by Gary K. Theisen, Cynthia Theisen, Daniel M. Theisen, Cheryl Ann. Theisen, Michael J. Theisen, Mark H. Theisen and Lorie D. Theisen and the real property described in Paragraph One (d) of this Order for Judgment shall be and hereby is annulled, made void and is of no further force and effect pursuant to Minnesota Statutes Section 513.28(1)(a).

3. That, to the extent that Plaintiff State Bank of Delano is unable to satisfy its judgment against Kenneth J. Theisen by the attachment, levy and execution against the assets set forth in Paragraph One of this Order for Judgment, it shall have judgment against Gary K. Theisen, Cynthia Theisen, Daniel M. Theisen and Lorie D. Theisen, jointly and severally, for the unpaid balance of its judgment against Kenneth J. Theisen up to a maximum amount of $43,000.00.

4. That Plaintiff State Bank of Delano shall have judgment against all of the Defendants, jointly and severally, for its reasonable attornes (sic) fees of $17,-739.25 and for its costs and disbursements herein.

5. That Plaintiff State Bank of Delano may in the future petition this Court for such other and further relief as is consistent with the Findings of Fact and Conclusions of Law set forth herein, and with the law governing this matter. LET JUDGMENT BE ENTERED ACCORDINGLY, after a thirty (30) day stay."

15. On March 1, 1983, the debtor filed a petition under Chapter 7 of Title 11 of the United States Code and Edward W. Bergquist, the plaintiff, was appointed trustee pursuant to 11 U.S.C. § 15701.

16. With his petition the debtor claimed as exempt his homestead in Watertown,

Minnesota, pursuant to the laws of Minnesota, presumably to Minn.Stat. § 510.01.

17. The meeting of creditors was first scheduled for April 4, 1983.

18. Objections to the claim of exemption in that period of time were governed by paragraph 5 of this Court's General Order of December 30, 1980, which provided:

> An objection to a claim of property claimed as exempt shall be filed within fifteen (15) days after the first date scheduled for the meeting of creditors or the date the exemption was filed, whichever is later.[2]

19. No objection to the debtor's homestead exemption has been filed by the trustee or anyone else.

20. By report dated June 8, 1983, and filed June 16, 1983, the trustee abandoned any interest in the real property which was fraudulently transferred by the debtor and his wife, concluding apparently that the property was too heavily encumbered to be of any value to the estate. *See,* 11 U.S.C. § 554(a).

21. On July 6, 1983, the debtor was discharged.

22. On June 18, 1984, the trustee filed his complaint initiating this adversary proceeding.

## DISCUSSION

It is worth pointing out in the first instance that although this litigation arises in the context of a bankruptcy case, its resolution revolves solely around issues of Minnesota law. To the extent that the debtor's right to a homestead exemption is at issue, that question must be resolved by reference to Minnesota statutes and case law. 11 U.S.C. § 522 gives bankruptcy debtors two choices of exemptions. A debtor can either claim the bankruptcy exemptions specifically set out in § 522(d) or "any property that is exempt under Federal law, other than subsection (d) of this

---

**2.** Effective August 1, 1983, objections to a claim of exemption are governed by Bankruptcy Rule 4003(b).

section, or State or local law that is applicable on the date of the filing of the petition...." 11 U.S.C. § 522(b)(2)(A). The debtor in this case has exercised the latter right and claimed his exemptions pursuant to Minnesota law. Specifically, he has claimed his homestead exemption pursuant to Minn.Stat. § 510.01 which provides in relevant part:

> The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such homestead, or for services performed by laborers or servants.

Thus the debtor's right to a homestead exemption must be determined under that statute and the cases interpreting it.

■ The trustee's complaint purports to state two claims, one under 11 U.S.C. § 548 and another under 11 U.S.C. § 544. Section 548 creates a right of a trustee to avoid certain transfers "on or within one year before the date of the filing of the petition." The transfer that the trustee here seeks to avoid was made in October of 1980 and the debtor's petition was filed in March of 1983. Thus it is clear that the transfer sought to be avoided is not on or within one year of the filing of the petition and therefore the trustee's first claim does not state a cause of action against the debtor upon which relief can be granted and should be dismissed.

The trustee's second claim relies on 11 U.S.C. § 544, presumably § 544(b), which provides:

The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Specifically, the applicable laws relied upon by the trustee are Minn.Stat. §§ 513.23 and 513.26. The trustee does not allege the existence of a creditor holding an unsecured claim who could avoid the transfer but for the purposes of this order, I will assume that at least one exists.[3]

Thus the avoidability of the conveyance involved comes down to interpretation of two Minnesota statutes. The first is Minn. Stat. § 513.23 which provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

The second is Minn.Stat. § 513.26 which provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

■ There is a federal law gloss on the avoidability in the context of a bankruptcy. Minn.Stat. § 513.28(1)(a) provides that the right to set aside a conveyance is only "to the extent necessary to satisfy [the creditor's] claim." However under the rule in *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), a case decided under the predecessor of § 544(b),[4] once avoidability is determined under state law, the transfer

---

**3.** This is a pretty good assumption since the State Bank of Delano is scheduled as a creditor in the amount of $53,000.00 on the debtor's bankruptcy schedules, which I assume is the same debt that existed at the time of the 1980 litigation between the bank and the debtor giving rise to the bank's state court fraudulent

transfer action. Thus I assume that at least the State Bank of Delano and perhaps other creditors would qualify to set aside this transfer under Minn.Stat. § 513.28.

**4.** 11 U.S.C. § 11 (repealed).

is entirely avoidable by a trustee in bankruptcy regardless of the amount of the creditor's claim relied on by the trustee.[5]

██ The transfer in question is the payment of $36,294.07 to prepay the contract for deed on the debtor's homestead. That payment was made to the vendor to satisfy, presumably dollar for dollar, a secured claim held by the vendor.[6] To be avoidable under Minn.Stat. § 513.23 a conveyance must be "without a fair consideration". Fair consideration is defined in § 513.22 which provides:

> Fair consideration is given for property, or obligation,—
>
> (1) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property, or obligation obtained.

Thus I think all parties have assumed that the contract vendor by satisfying dollar for dollar an antecedent secured debt gave fair consideration. Even if I adopt the trustee's rather strained view of what the conveyance is, there was fair consideration. Apparently the trustee is not treating the payment on the contract for deed as a conveyance but rather claims that there was some sort of transfer of "proceeds into the homestead". *See* Paragraph VII of the plaintiff's complaint. The argument is, then, that the conveyance consists of turning non-exempt property into exempt property. Since that exchange is dollar for dollar, the conveyance is still for fair consideration.[7] Thus I conclude that there is no avoidable conveyance under Minn.Stat. § 513.23.

This brings us to the claimed cause of action under Minn.Stat. § 513.26. Once again, of course, the conveyance which the trustee alleges was fraudulent was the payment to the contract for deed vendor who is not a defendant. I suspect that is for good reason since I assume that the contract for deed vendor was without knowledge of the fraud and also apparently gave fair consideration. As noted, the rights of the trustee under 11 U.S.C. § 544(b) are derivative. The rights of the trustee are those possessed under state law by unsecured creditors with the expansion given by the Supreme Court in *Moore v. Bay, supra.* When a fraudulent conveyance is identified, the remedy is set out in Minn.Stat. § 513.28, which reads:

> (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser:
>
> (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> (b) Disregard the conveyance and attach or levy execution upon the property conveyed.
>
> (2) A purchaser who without actual fraudulent intent has given less than a fair consideration for the conveyance or

---

**5.** "The 'rule' has been often criticized and rarely defended. It has been suggested that the 'rule' is really not set forth in the opinion. It has been suggested that the case, even if it did embody the 'rule', should not be taken seriously because Justice Holmes was over 90 years when he wrote the opinion. These suggestions fail to take into account that the Court was unanimous and that the mandate was clear even if the opinion was ambiguous and inadequate. At all events, neither Congress nor the Supreme Court has ever sought to change the 'rule', which may be taken as a permanent feature of our bankruptcy law."
2 Gilmore, § 45.3.1, at 1290.

**6.** The identity of the vendor has not been disclosed, nor is the vendor a defendant in this action.

**7.** Minn.Stat. § 513.20 provides that "'conveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance."

obligation, may retain the property or obligation as security for repayment.

Everyone seems to assume that the contract for deed vendor was not a party to any fraud and therefore the conveyance would not be avoidable. *See, Neubauer v. Cloutier*, 265 Minn. 539, 122 N.W.2d 623 (1963). Thus I think a literal reading of the Minnesota statute makes the conveyance attacked nonavoidable.

However, lest I be accused of honoring form over substance, I think that even the so-called conveyance of the cash into the homestead attacked by the trustee is not avoidable.

The debtor argues that the fraudulent conveyance action is, in effect, an objection to his claim of exemption which is not timely. To a certain extent, of course, he is correct and to the extent that this proceeding is a collateral attack on the debtor's exemption it must be overruled as being untimely. More importantly, however, I think as a matter of Minnesota law the objection would fail. To the dismay of many, Minnesota has an extremely generous exemption statute which the courts have generously construed. As long ago as 1889 the Minnesota Supreme Court stated:

> A debtor in securing a homestead for himself and family, by purchasing a house with non-exempt assets, or by moving into a house which he already owns, takes nothing from his creditors which the law secures to them, or in which they have any vested right. He merely puts his property into a shape in which it will be the subject of a beneficial provision for himself, which the law recognizes and allows. Even if he disposes of his property subject to execution, for the very purpose of converting the proceeds into exempt property, this will not constitute a legal fraud. This he may do at any time before the creditors acquire a lien upon the property. It is a right which the law gives him, subject to which everyone gives him credit, and fraud can never be predicated on an act which the law permits.

*Jacoby v. Parkland Distilling Co.*, 41 Minn. 227, 229–230, 43 N.W. 52 (1889). *See also, O'Brien v. Johnson*, 275 Minn. 305, 148 N.W.2d 357 (1967). At least two Bankruptcy Court cases of which I am aware have allowed this so-called conversion of non-exempt property into exempt property. *In re Olson*, No. 6–66–513 (Bktcy.Minn. Feb. 16, 1967) and the more recent case of *In re Olson*, 45 B.R. 501 (Bktcy.Minn.1984). A contrary but not necessarily inconsistent result was reached by the Bankruptcy Court *In re McGlynn*, Nos. 4–74–925, 4–74–926, and 4–75–88 (this opinion can also be found as an appendix to *Mickelson v. Anderson*, 31 B.R. 635 (Bktcy.Minn.1982) starting at 31 B.R. 639.) The *McGlynn* case, however, involved property which had been fraudulently obtained and then converted into exempt property in an attempt to shield it from the creditors from whom the property had been fraudulently obtained. Similarly, in *Kangas v. Robie*, 264 F. 92 (8th Cir.1920), the Eighth Circuit held that the transfer by debtor of business receipts into the purchase of a new homestead resulted in the denial of the homestead exemption. While the money in question here was apparently obtained as consideration for a fraudulent conveyance, there is no indication that the property conveyed was somehow *obtained* fraudulently. The transaction in this case is really no different than if the debtors had sold their non-exempt property, paid $36,000.00 on the contract for deed on their homestead and given the rest of the cash to their children. To the rest of the cash to their children. To the extent that cash would have been given to their children, that would be recoverable as a fraudulent conveyance under Minnesota law. However, the cash paid to increase the equity on their homestead would not affect their homestead exemption under Minnesota law.

The trustee's complaint is couched in terms of fraudulent conveyance and not in terms of an objection to the debtor's claim of exempt property. To the extent that the fraudulent conveyance argument is nothing more than a disguised objection to exemp-

tion argument, it of course must be overruled for the reasons in the foregoing discussion. To the extent that it is not an objection to exemption it must be denied as not being sustainable under Minnesota law. There are surprisingly few reported Minnesota fraudulent conveyance cases and even fewer that shed any light on this situation. However one that does, I think, is *Nash v. Bengtson*, 179 Minn. 7, 228 N.W. 177 (1929), a fraudulent conveyance action pressed ultimately by a bankruptcy trustee. The facts in *Bengtson* are somewhat complex and are described by the Minnesota Supreme Court as follows:

Andrew Bengtson, husband of Hannah Bengtson and father of Edwin, died intestate on January 6, 1928, the owner of contiguous tracts of farming land (339 acres) worth $30,000 and personal property of the value of approximately $4,600, all free from encumbrance. A considerable portion of the personal property was cash kept in a safety deposit box. The defendant Genevieve Bengtson is the wife of Edwin. Andrew left surviving him as his only heirs his widow, Hannah (61 years of age), the son Edwin, and daughter Dora Seiler. The widow inherited a life estate in the homestead (approximately 74 acres) that had been occupied by the father and mother, and by Edwin and his wife for a number of years, and an undivided one-third of the remaining real estate. Edwin and the daughter, Dora, each inherited one-third of all the real estate subject to the life estate of Hannah in the homestead. Each of the three heirs was entitled to a one-third interest in the personal property.

Edwin at the time of the father's death was heavily indebted, his liabilities consisting of both secured and unsecured obligations. He was then insolvent. He owned livestock and machinery worth $1,890, 1,200 bushels of corn, an undivided one-half interest in 160 acres of unimproved farm land some miles distant from the homestead in which he had no equity at that time. He owed approximately $13,625 to various creditors, of

which original plaintiff bank was one, and in addition to that amount he had executed mortgages on the land last above mentioned aggregating $13,800. All of his said indebtedness was unpaid and a considerable portion past due on January 6, 1928, and at the time of the commencement of this action on January 23. A lis pendens was filed; an answer dated February 8 was interposed and a reply served.

On January 7, 1928, the day after his father's death, Edwin went to a near-by village and consulted a local attorney (not one of the present counsel) and at that time executed a deed conveying all his right, title and interest in and to all the real estate owned by his father at the time of his death, to his mother (his wife not joining therein) which deed was duly recorded on January 10. On the same day he made a bill of sale to his mother of all his interest in the personal estate left by his father, the net value of Edwin's interest therein after expenses of administration being about $1,300. A month later, on February 7, 1928, defendant Genevieve Bengtson and Dora Seiler and her husband conveyed their interest in the 339 acres of land by quitclaim deed to the defendant Hannah, which deed was recorded February 11, 1928. On February 7, 1928, Hannah conveyed to defendant Edwin all her right, title and interest in the homestead above referred to. On February 7, 1928, Edwin gave a chattel mortgage to his uncle on certain of his personal property to secure claimed past unpaid indebtedness of $2,000. He also then gave his brother-in-law, Seiler, a bill of sale of 1,200 bushels of corn. On June 4 he gave to another brother-in-law a chattel mortgage covering all the crops on the 339 acres, which he was then cropping and had been for 16 or 17 years as a tenant, and also on his share of the crops on some other leased land.

Edwin filed a voluntary petition in bankruptcy on July 9, 1928, at which time he

still had all of the indebtedness that was in force at the time of his father's death. 179 Minn. at 8–9, 228 N.W. at 177–178. Essentially Edwin increased his interest in his exempt homestead from a one-third remainder interest to a fee simple, by transferring in exchange therefor non-exempt property. The Court held that the transfers of his non-exempt property were fraudulent conveyances and could be avoided. Significantly, no attack was made on the increased homestead exemption which inured to Edwin as a result of the fraudulent conveyances. The situation faced in the state court litigation preceding this bankruptcy case has a lot of similarities to the facts in *Bengtson*. The jury and the trial court found the transfers by the debtors to be fraudulent conveyances as did the Court in *Bengtson*. The District Court in this matter also fashioned an extremely detailed remedy for the fraudulent conveyances but did not in any way impair the increased homestead exemption obtained by the debtor by paying the contract for deed on his homestead.

At least one Minnesota bankruptcy case involved a situation similar to this one. In the case of *Mickelson v. Anderson (In re Anderson)*, 31 B.R. 635 (Bktcy.Minn.1982), the Court allowed the trustee to avoid as a fraudulent transfer under 11 U.S.C. § 548 an advance payment on the mortgage on their homestead with funds generated by the sale of non-exempt assets.[8] However, the *Anderson* case was a fraudulent transfer case under the Bankruptcy Code and thus was an application of federal law. Whether or not I would follow the result in *Anderson* in a § 548 case, I hazard no opinion. However in this situation which is

under § 544(b) as it encompasses Minnesota law, I think the result is different. I conclude that under Minnesota law the transaction that the trustee seeks to attack is not avoidable.

Results such as the one reached today have never been very popular.[9] The Minnesota Supreme Court itself has criticized the Minnesota homestead exemption a number of times, including the following comment:

> For over 100 years we have deplored the injustices which have arisen from the application of our statutory exemptions. The purpose of the constitutional exemption as we see it is to render the family home secure, not to permit a debtor who already enjoys that protection to escape his just obligations by seeking refuge in valuable income-producing property of which his homestead is but a small part. Nevertheless, the law is so well settled that however distasteful it may be, we feel reluctantly compelled to apply it.

*O'Brien v. Johnson*, 275 Minn. 305, 310, 148 N.W.2d 357, 361 (1967). Bankruptcy Judge Dim referred to a transaction such as this one as "a moral wrong, but a legal right." *In re Olson*, No. 6–66–513 (Bktcy. Minn. Feb. 16, 1967).

To sum up, I think that absent some sort of sheltering of fraudulently obtained money it is within the purview of the Minnesota exemption laws to allow the so-called conversion of non-exempt property into exempt property. Such conversion is not properly grounds for an objection to a claim of exemption made under Minnesota

---

**8.** The *Anderson* case points up the difficulty of trying to make an artificial distinction between a claim of homestead exemption and the avoidance as a fraudulent transfer or conveyance of the payments made on the secured debt on the homestead. The casual reader might think that the *Anderson* case was a homestead exemption case;. however an examination of the trustee's complaint will reveal that the trustee's suit was to recover a fraudulent transfer under 11 U.S.C. § 548. I must admit, however, that most of Judge Owens' discussion in *Anderson* appears to be an analysis of Minnesota homestead exemp-

tion law and to the extent that *Anderson* can be read to be denying a homestead exemption, I would disagree with it. *See In re Olson*, 45 B.R. 501 (Bkrtcy.Minn.1984).

**9.** Such transfers are not without their defenders, however. *See,* Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy,* 31 Rutgers L.Rev. 615 (1978), *reprinted in* Com.L.J. June/July 1980, p. 238.

law.[10] Likewise, such conversion in and of itself does not constitute a fraudulent conveyance within the purview of Minn.Stat. § 513.20 *et seq.*[11] Therefore I conclude that the debtor is entitled to summary judgment.[12]

THEREFORE, IT IS ORDERED:

1. The plaintiff's complaint is dismissed.
2. Judgment shall be entered accordingly.

---

10. If a claim of exemption is made under 11 U.S.C. § 522(d), bankruptcy courts presumably would be free to make their own analysis of such a conversion.

11. Likewise the result could potentially be different if a transfer is sought to be avoided under

11 U.S.C. § 548(a). *See, Mickelson v. Anderson, supra.*

12. Such a transfer could create the basis of an objection to discharge under 11 U.S.C. § 727(a)(2). I express no opinion as to the merits of such an objection.