RICHARD S. ARNOLD, Circuit Judge,
dissenting.
I respectfully dissent from the Court’s opinion. The Court fails to identify any evidence of fraud extrinsic to Mr. Shol-dan’s conversion of non-exempt property for the purpose of protecting his- assets from creditors. The controlling law in this Circuit is clear:
[I]t is not a fraudulent act by an individual who knows he is insolvent to convert a part of his property which is not exempt into property which is exempt, for .the purpose of claiming his exemptions therein, and of thereby placing it out of the reach of his creditors.
Forsberg v. Security State Bank, 15 F.2d 499, 501 (8th Cir.1926).
Consistently with our precedent, the Court today acknowledges that “there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt....” Ante at 1011 (quoting Norwest Bank Nebraska N.A. v. Tveten, 848 F.2d 871, 875 (8th Cir.1988)). But our rule is broader, including not only the fact of conversion but also the fact that the debtor’s purpose in conversion is to evade his creditors. See, e.g., Tveten, 848 F.2d at 874 (conversion not fraudulent “even if the motivation behind the conversion is to place those assets beyond the reach of creditors.”); see also O’Brien v. Johnson, 275 Minn. 305, 148 N.W.2d 357, 360 (1967) (debtor’s “assert[ion] of an exemption for the express purpose of evading his creditors” is “not fraud regardless of the debtor’s motive.”).[6] I believe that the Court’s analysis of this case is flawed because it fails to recognize this principle.
The facts upon which the Court bases its holding show only that Mr. Sholdan, as allowed by law, purchased his home with the purpose of putting his assets beyond the reach of his creditors. The Court notes that the purchase was “a radical departure” from his previous lifestyle, initiated only in the face of his imminent liability and on the advice of an attorney. A debtor will always make some sort of departure when he converts property to protect his assets, and it is not normally the business of judges to decide what “lifestyle” a citizen should choose. The Court notes that Mr. Sholdan purchased a more expensive home than he needed or could afford; Mr. Sholdan also required the seller to make additions to the home so that its sale price would precisely equal the ¿mount of assets which he sought to protect with his purchase. This simply shows that Mr. Sholdan sought to protect as much" of his assets as the law allowed, a practice that we have found is not evidence of fraud. Forsberg, 15 F.2d at 502 (no *1012 evidence of fraud in converting assets to take maximum advantage of exemptions). None of this is extrinsic to Mr. Sholdan’s act of conversion or his motivation to avoid creditors; it is therefore not evidence of fraud.
This Court has in the context of other exemptions considered whether the value of an exemption was so large that it went beyond the social policies justifying the exemption. See Tveten, 848 F.2d at 875-76 (8th Cir.1988) ($700,000 exemption in annuities went beyond the goal of providing debtors with a fresh start). But we have explicitly rejected this practice for homestead exemptions, deferring to the state legislatures to cap the size of these exemptions. In re Johnson, 880 F.2d 78, 82 (8th Cir.1989). Accordingly, the fact that Mr. Sholdan purchased a more expensive house than the Court thinks he needed is legally irrelevant, except to demonstrate that he was seeking to protect all the assets allowed under the exemption.
The Court characterizes Mr. Sholdan’s use of the homestead exemption as a “rank injustice.” Ante at 1011. The Supreme Court of Minnesota has itself “deplored the injustices which have arisen from the application of [the homestead exemption].” O’Brien, 148 N.W.2d at 361. Nevertheless, in the same case, the Court found no fraud where tortfeasors, before judgment could be entered against them, sold their old home and transferred their residence to a much more expensive property. As in this case, the court found that the tortfea-sors’ purpose was to evade their creditors. As in this case, the new residence, a large commercial property of which living quarters were only a small part, far exceeded the tortfeasors’ practical needs for a residence. The Court found no fraud because the tortfeasors’ purpose of evading their creditors was not extrinsic to their use of the homestead exemption. Id. at 360. As to the injustice of allowing a debtor to escape his creditor so openly, the Court found that it was bound by well settled law to find no fraud without some extrinsic evidence of fraudulent intent.[7] While Mr. Sholdan’s case may not be a sympathetic one, his exemption is allowed under Minnesota law, and, like the Supreme Court of Minnesota, we are bound to allow it to him regardless of our sense of its impropriety.

. Although neither the motive to evade creditors nor the act of conversion itself is extrinsic evidence of fraud, "[ejxtrinsic evidence can be composed [of] further conduct intentionally designed to materially mislead or deceive creditors about the debtor's position; conveyances for less than fair value; or, the continued retention, benefit or-use of property allegedly conveyed ... for inadequate consideration." In re Johnson, 880 F.2d 78, 82 (8th Cir.1989). See, e.g., McCormick v. Security State Bank, 822 F.2d 806 (8th Cir.1987) (extrinsic evidence of fraud where debtor lied to loan officer about the state of his finances to gain time to liquidate non-exempt assets and purchase exempt home).

. In addition to being well settled law, the protection of the homestead forwards important social policies of its own, just as much a part of justice as the protection of the rights of creditors. See In re Johnson, 880 F.2d at 82 (reviewing the policy arguments for the homestead exemption). We are not the first to recognize the justice in allowing the debtor a fresh start. See Deuteronomy 15:1-2; Leviticus 25:10, 28.