In re Vincent J. NEMETI, Debtor.

Vincent NEMETI, Plaintiff,

v.

SEAWAY NATIONAL BANK and Amlea (New York), Inc., Defendants.

Bankruptcy No. 85–00200.
Adv. No. 85–0067.

United States Bankruptcy Court, N.D. New York.

July 16, 1986.

---

Hancock & Estabrook, Syracuse, N.Y., for Amlea, Inc.; Thomas C. Buckel, Jr., of counsel.

Conboy, McKay, Bachman & Kendall, Watertown, N.Y., for Seaway Nat. Bank; Floyd J. Chandler, of counsel.

Goldberg, Harding & Talev, P.C., Syracuse, N.Y., for plaintiff-debtor; Harold P. Goldberg, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

Vincent Nemeti ("Debtor") filed his petition for relief under Chapter 11 of Title 11 U.S.C. ("Code") on March 18, 1985. On September 5, 1985, Debtor filed his adversary complaint against Seaway National Bank ("Seaway") and Amlea (New York), Inc. ("Amlea"), seeking to set aside and invalidate a sale of Debtor's interest in real property. By virtue of an affirmative defense in its answer, Amlea alleged Debtor's complaint failed to state a claim upon which relief can be granted, Fed.R.Civ.Pro. 12(b)(6), Bankr.R.Pro. 7012(b), and by motion dated March 28, 1986, Amlea coupled this defense with the alternative relief of summary judgment pursuant to Fed.R.Civ. Pro. 56, Bankr.R.Pro. 7056. Seaway joined in this motion. The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, with the following decision rendered pursuant to Fed.R.Civ.Pro. 12(b), applying Fed.R. Civ.Pro. 56. (Bankr R.Pro. 7012(b), 7056).

## FINDINGS OF FACT

On May 27, 1981, Debtor granted a mortgage to Seaway on property known as the "Dorset Building" located in the City of Syracuse, New York to secure any and all indebtedness of Debtor up to $200,000.00.

On or about June 14, 1984 Seaway commenced a mortgage foreclosure action on the above obligation, receiving judgment thereon or about February 15, 1985. As noted, Debtor subsequently filed his petition for relief with the Court.

On April 23, 1985, and June 4, 1985, Seaway, pursuant to Code § 362(d) requested the Court to either dismiss the automatic stay and/or require Debtor to provide adequate protection. By Order dated June 13, 1985, the Honorable Leon J. Marketos, Bankruptcy Judge, instructed Debtor to provide Seaway with a written plan for payments which would adequately protect the lender's interest in the property. This Order was self-effectuating, providing that upon Debtor's failure to promulgate a plan on or before June 28, 1985, the automatic stay was lifted so as to allow Seaway to proceed with its foreclosure action. Debtor failed to submit a written plan for payments by the deadline, and consequently, Seaway began preparations for a foreclosure sale.

The Referee's Report of Sale, dated September 23, 1985, (incorporated in the affidavit of Floyd J. Chandler, Esq., dated March 25, 1986), indicates the property was advertised to be sold at the Onondaga County Clerk's office, Onondaga County Courthouse, at 11:00 o'clock a.m. on August 30, 1985. The Referee published notice of the

time and place of the sale in The Post-Standard, a daily newspaper of general circulation published in the City of Syracuse, New York. The notice was published on August 5, 1985, August 6, 1985, August 12, 1985, August 13, 1985, August 19, 1985, and August 20, 1985. Further, the Court takes notice that on Tuesday, August 20, 1985, an article concerning the proposed sale appeared in the Business and Real Estate section of the Syracuse Herald-Journal, a newspaper of general circulation published in the City of Syracuse, New York. (Mulder, *Dorset auction finally set; Galleries long has eyed site*, Syracuse Herald-Journal, Aug. 20, 1985, at 85, Col. 1)

On August 30, 1985, the property was sold to Amlea, the highest bidder at the foreclosure sale, for the sum of $257,500.00. This amount represented a deficiency to Seaway in the amount of $197.78,[1] and represented the second bid received at the sale.[2]

The foreclosure sale was conducted in the lower lobby of the Onondaga County Courthouse. Floyd J. Chandler, Esq., by affidavit dated March 26, 1986, stated he appeared at the sale, and in his opinion, approximately one hundred people were present. Chandler states that several representatives of the broadcast and print media were in attendance, with the proceedings recorded by at least one local television station.

It appears that at the time of sale, real estate taxes in an amount in excess of $100,000.00 constituted a lien against the property, in addition to a mechanics lien in the amount of $26,119.02. Further, purchase was made subject to the lease rights of a tenant occupying a portion of the property. Debtor did not initiate proceeding to set aside the sale pursuant to N.Y. Real Prop.Acts § 231(6) (McKinney 1979).

The "Dorset Building" occupies a site in close proximity to the "Galleries of Syracuse" development project within the City of Syracuse. The project, an urban retail/office mall similar to those in vogue throughout the United States, is being developed by Amlea. The property purportedly occupies the site the developer intends to use to link the "Galleries" project with the adjacent "Hotels at Syracuse Square".

Debtor alleges the property's value is between $607,478.96 and $999,674.39, but provides no proof of this claim by appraisal or affidavit. By virtue of a promissory note dated March 15, 1983, Debtor represented the value of the property to be $210,000.00 (as of May 19, 1981). Debtor contends, again without support, that the property's value may well exceed the higher valuation by virtue of its situs within the proposed "Galleries" project.

Debtor alleges the foreclosure sale of August 30, 1985 was fraudulent; no other purchaser could acquire an interest in the property due to Amlea's prior negotiations with the City of Syracuse. Debtor points to an ordinance adopted by the Common Council of the City of Syracuse on February 6, 1984, approved by the Mayor of Syracuse on February 21, 1984, which Debtor claims "in effect condemned the property or gave Amlea a right of condemnation, so as to exclude any further bidders from acquiring the property on the foreclosure sale." This, Debtor contends

---

**1.** The Referee's report included the following statement:

| Purchase Price: | | $257,500.00 |
|---|---|---|
| Referee's fees: | $ 200.00 | |
| Plaintiff's costs & disbursements | 564.29 | |
| Interest 2/7/85 to 8/30/85 | 28.38 | |
| Advertisement costs: | 725.34 | |
| | | 1,518.01 |
| | | $255,981.99 |
| Judgment: | $216,876.71 | |

| Int. 2/7/85 to 8/30/85 | 10,909.19 | |
|---|---|---|
| Attorney's Fees: | 1,500.00 | |
| Additional Allowance: | 300.00 | |
| Interest 2/7/85 to 8/30/85 | 15.09 | |
| Real Estate Taxes and Insurance | 26,578.78 | |
| | | $256,179.77 |
| Deficiency | | $ 197.78 |

**2.** Seaway had initially bid $257,000.00 as its upset price.

makes the resultant sale collusive and fraudulent.

## ARGUMENTS

Debtor alleges the post-petition foreclosure sale, commenced after Seaway sought relief from the automatic stay, was a fraudulent conveyance in contravention of Code § 548. Debtor asserts the section is applicable due to subdivision (d)(1) thereof.[3] Debtor contends that regularly conducted foreclosure sales are subject to independent Court review as avoidable under Code § 548 where less than fair market value is received, *Durrett v. Washington Nat. Ins. Co.*, 621 F.2d 201 (5th Cir.1980); *Schafer v. Hammond*, 456 F.2d 15 (10th Cir.1972); *Abramson v. Lakewood Bank & Trust*, 647 F.2d 547 (5th Cir.1981), or where there is indicia of fraud, unfairness or oppression relating to and accounting for the inadequacy of price, *In re Madrid*, 21 B.R. 424 (Bankr. 9th Cir.1982).

Debtor asserts a question of fact exists, making summary judgment improper as the foreclosure sale was conducted after improper notice. *See Weil v. Laube*, 134 Misc. 454, 235 N.Y.S. 14, *aff'd.* 227 A.D. 729, 236 N.Y.S. 919 (1929).

In support of its motion to dismiss, Amlea contends Code § 548 is inapplicable where the transfer takes place at a foreclosure sale undertaken after a creditor obtains relief from the automatic stay. *See, In re Earl Roggenbuck Farms, Inc.*, 51 B.R. 913 (Bankr.E.D.Mich.1985). Of necessity, argues Amlea, the Court determined Debtor had no equity in the property when it ordered Debtor to provide adequate protection in the form of payment. Further, even assuming Debtor has asserted a claim upon which relief can be granted, Amlea deems summary judgment appropriate for the consideration received at a regularly conducted foreclosure sale is conclusively presumed to constitute "reasonably

equivalent value" under Code § 548. *In re Upham*, 48 B.R. 695 (Bankr.W.D.N.Y. 1985); *In re Strauser*, 40 B.R. 868 (Bankr. N.D.Ohio 1984); *In re Madrid, supra.*

Seaway contends the foreclosure sale was properly conducted, and in any event, the confirmation of a foreclosure sale cures defects in the proceedings and irregularities of a nonjurisdictional nature. *Bechstein v. Schultz*, 120 N.Y. 168, 24 N.E. 388 (1890); *Farmer's Loan & Trust Co. v. Banker's & Merch. Tel. Co.*, 119 N.Y. 15, 23 N.E. 173 (1890); *Martin Realty Co. v. Bay View Heights Land Co.*, 107 Misc. 140, 177 N.Y.S. 158 (1919).

## CONCLUSIONS OF LAW

 The initial question is whether Code § 548 is applicable to a post-petition foreclosure sale which takes place after a creditor has successfully moved for relief from the automatic stay, due to a debtor's failure to provide adequate protection in the form of payment, or prove the existence of a sufficient equity cushion in the property.

> Code § 548(a) authorizes a trustee to … avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . . .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; …

Just as Code § 548 excludes transfers taking place more than one year prior to the filing of the bankruptcy petition, *In re*

---

3. Code § 548(d)(1) provides:

> For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchase from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

*Theisen,* 45 B.R. 122 (Bankr.D.Minn.1984); *In re Gefen,* 35 B.R. 368 (Bankr.S.D.Fla. 1984); *In re O.P.M. Leasing Services, Inc.,* 32 B.R. 199 (Bankr.S.D.N.Y.1983), the section also does not apply to post-petition transfers. *In re Earl Roggenbuck Farms, Inc., supra,* at 921–2. While Debtor's counsel seeks to rely upon Code § 548(d)(1) for the proposition that the section is applicable to any post-petition transfer,

> [t]he manifest purpose of ... the new 548(d)(1) is to prevent fraudulent transfers from becoming impregnable to attack by keeping them secret until the limitation period has lapsed. In effect, a transfer is not made for the purposes of paragraph (d)(1) until it becomes known or discoverable by exercise of reasonable diligence. The test is worded in comprehensive terms to facilitate the broad application it deserves. The provision embraces not only recording, if necessary under state law to validate the transfer as against a bona fide purchaser, but also the taking of an open possession and every other method of making the transaction good against the world pursuant to the applicable law governing the perfection of the transfer in question.

King, 4 COLLIER ON BANKRUPTCY, ¶ 547.08, 548–87, 548–88 (15th ed. 1986). Clearly, Code § 548(d) is not concerned with the sort of post-petition activity which Debtor seeks to nullify herein.

Debtor's reliance upon *Durrett v. Washington Nat. Ins. Co., supra,* is confusing. *Durrett* adopts the view that the foreclosure activity itself is a "transfer" of a property interest, one distinct from the "transfer" of the original security transaction. Hence, a trustee may either argue the initial security agreement was fraudulent, or dispute a subsequent foreclosure sale if the debtor is insolvent and less than fair value is received. While the *Durrett* rationale certainly brings most foreclosure sales within the one year period of vulnerability, the decision does not alter the language of Code § 548(a) which looks to transfers of property interests occurring *prior to* the filing of the petition.

Because Code § 548(a) is so clearly inapplicable in the present matter, the Court declines to review the substance of the foreclosure sale herein, beyond than to note that *Weil v. Laube, supra,* is not controlling. In *Weil,* a foreclosure sale was held in a place removed from that advertised. Potential bidders affirmed to the court that they were unable to find the sale, for when the same was held, only plaintiff, plaintiff's attorney, and referee were present. All three were employees of the same title company, and while the court accepted their sworn statements that the sale was conducted in good faith, it determined a new sale was necessary. A reading of *Weil* reveals the Supreme Court's decision turned upon the specific facts presented.

In the present matter, there is no showing potential bidders were confused or misled by the fact that the sale was held in the lobby of the Onondaga County Courthouse, rather than the County Clerk's office located in the same building. Indeed, it appears the sale was well publicized and well attended. Further, the statute of limitations has yet to run under N.Y.Real Prop.Acts § 231(6) (McKinney 1979), thus allowing Debtor the opportunity to seek redress by the means available therein.

As a consequence of the foregoing, it is

ORDERED:

1. The motion of Amlea and Seaway to dismiss the adversary complaint of Debtor is granted, the dismissal being with prejudice.